[No. 65632-5-I.   Division One.   September 19, 2011.]

SEATTLE POLICE DEPARTMENT, *Respondent,*
v. ERIC WERNER, *Appellant.*

*Alexander J. Higgins* (of *Law Offices of Alex J. Higgins*), for appellant.

*Peter S. Holmes, City Attorney,* and *Amy Lowen, Assistant,* for respondent.

¶1 BECKER, J. — The Seattle Police Department fired Officer Eric Werner for lying in an internal investigation. The Seattle Public Safety Civil Service Commission reduced the discipline to a 30 day suspension. The commission found that the police department was not applying its rules evenhandedly. Because this finding is not supported by substantial evidence, the commission is ordered to reconsider its decision.

## FACTS

¶2 The Seattle Police Department requires its officers to be truthful in all official statements, including statements made in internal investigations. The department's policy and procedures manual puts officers on notice that "sustained allegations of dishonesty" may be grounds for termination:

V. Honesty

A. Employees shall be truthful and complete in all official oral and written communications, statements, and reports; testimony; official administrative and employment records; and statements and interviews in internal investigations. . . .

B. Sustained allegations of dishonesty may affect an employee's ability to serve as an effective witness in court, and thus may be grounds for termination subject to the provisions of the applicable collective bargaining agreement.

SEATTLE POLICE DEPARTMENT POLICY AND PROCEDURE MANUAL § 5.001(V) (Honesty) (effective June 10, 2009).

¶3 Officer Eric Werner made a dishonest statement during an internal investigation in 2007 when he denied striking a suspect. The Seattle Office of Professional Accountability was investigating a complaint that Werner and another officer used excessive force when detaining the suspect. According to Werner's written statement about the incident, he was dispatched to investigate a car prowl in progress and arrived on the scene to find the suspect

struggling with the other officer. Werner wrote that he used his stun gun on the suspect after giving him a verbal warning. When asked several times in an interview if he also struck the suspect, Werner answered no.

¶4 In May 2008, Werner applied for a job with the Snohomish County Sheriff's Office. He knew the screening process would include a polygraph test. Werner disclosed that he had been untruthful during the investigation of the incident in Seattle. Werner admitted that he actually struck the suspect in the face.

¶5 Informed of Werner's disclosure, the Office of Professional Accountability (OPA) conducted a new investigation into whether Werner had violated the "Honesty" rule quoted above. The investigators recommended sustaining the charge of dishonesty. Werner was notified that the Seattle police chief, then Gil Kerlikowske, was considering terminating him.

¶6 Werner was given two pretermination hearings. The first hearing was held before Chief Kerlikowske in December 2008. John Diaz, then deputy chief, was also present. The matter was continued to permit Werner to be evaluated to see if there were any mitigating psychological factors. The psychologist reported that Werner exhibited a "consistent pattern of dishonesty" and that his untruthful statement in 2007 was a "knowing omission" and not a memory issue.

¶7 The second hearing was held in March 2009. After the hearing, Diaz—by then the interim police chief—decided to terminate Werner for violating the honesty rule.

¶8 Werner exercised his right as a tenured employee to appeal his termination to the Seattle Public Safety Civil Service Commission. *See* SEATTLE MUNICIPAL CODE (SMC) 4.08.100. The commission held a two day evidentiary hearing in October 2009 and then issued a decision, including findings of fact and conclusions of law. The commission concluded that the honesty rule was reasonable and that

the investigation was fair. All three members concluded the chief had substantial evidence that Werner violated the rule as charged. "The investigation, meetings, and evaluations provided Interim Chief Diaz substantial and credible evidence that Officer Werner had been dishonest during an OPA interview." Finding of Fact 26.

¶9 Having upheld the finding of dishonesty, the commission split on the issue of appropriate discipline. The two-commissioner majority modified the discipline to a 30 day suspension of duties without pay. They decided termination was unfair because (1) "evidence does not support that the Department even-handedly applied its rules" and (2) "Officer Werner had an unblemished record prior to this charge of dishonesty." The dissenting commissioner voted to sustain the police department's decision to fire Werner. In his view, the record did not support a finding that termination was inconsistent with discipline in previous cases, and "sympathy for an officer with an apparent good record" should not overcome the deference owed to the police chief who acted in good faith after carefully weighing the evidence and his options.

¶10 The police department took an appeal to superior court by way of a writ of certiorari under RCW 7.16.040. Acting in its appellate capacity and not as a trier of fact, the superior court determined that the commission's finding concerning the police department's lack of evenhandedness was erroneous. Because it was not clear that the commission would have reduced the discipline based solely on the remaining finding of Werner's good record, the court remanded for the commission to decide that issue. Werner appeals and asks that the commission's decision be reinstated.

## STANDARD OF REVIEW

¶11 The Seattle Public Safety Civil Service Commission is part of Seattle's civil service system for Seattle police

employees. Washington's legislative scheme, and how Seattle's commission fits into it, is described in *City of Seattle Police Department v. City of Seattle Public Safety Civil Service Commission*, 155 Wn. App. 878, 885-87, 230 P.3d 640, *review denied*, 169 Wn.2d 1028 (2010) (*Roberson*).[1]

¶12 Under Seattle's ordinance, a public safety employee may be removed, suspended, demoted, or discharged "for cause." A disciplined employee may demand a hearing where the commission reviews the discipline. The commission has authority to affirm, reverse, or modify the disciplinary order. The review hearing is confined to the determination of whether the removal, suspension, demotion, or discharge was made "in good faith for cause." SMC 4.08.100; RCW 41.12.090.

¶13 In deciding whether the discipline imposed was "in good faith for cause," a term not defined by ordinance or statute, the commission employs the "seven tests" attributed to arbitrator Carroll R. Daugherty: (1) the employee had notice that his or her conduct would result in disciplinary consequences, (2) the rule was reasonable, (3) the employer investigated to determine whether the rule was in fact violated, (4) the investigation was fair, (5) the employer's decision maker had substantial evidence that the employee violated the rule as charged, (6) the employer applies its rules evenhandedly, and (7) the discipline administered was fair in relation to the nature of the offense and imposed with regard to the employee's past work record. *Roberson*, 155 Wn. App. at 887-88. The Daugherty analysis is widely used by arbitrators under collective bargaining agreements. *Roberson*, 155 Wn. App. at 888.

¶14 The department was on the losing side in *Roberson*, where it argued against the commission's use of the Daugherty analysis. We recognized that the department has a "persuasive argument that the chief of police must be

---

[1] Richard Roberson was the officer involved in the case. We will refer to the case as "*Roberson*."

able to hold officers to a high standard and to consider whether the officer's conduct harms the public service, and that the chief's judgments must be respected by the Commission." *Roberson*, 155 Wn. App. at 890. We nevertheless concluded that the wide discretion afforded to the commission includes the discretion to define terms left undefined in the statute and ordinance. *Roberson*, 155 Wn. App. at 891. Accordingly, we held that the commission could use the seven factors test to analyze whether discipline was "in good faith for cause." Here, the department argues that the commission's exclusive reliance on the seven factors test, a standard developed in the context of labor law, is legal error in a civil service system where the primary purpose is protecting public safety. Our disposition of this case makes it unnecessary to revisit the propriety of the commission's use of the Daugherty factors, and we decline to do so.

¶15 With the sixth Daugherty factor in mind—evenhandedness—Werner introduced evidence concerning some of the department's past disciplinary cases. Werner argued these cases were comparable because they involved dishonesty, yet the officers in question were not terminated. Based on these other cases, the commission found that the department was not applying its rules evenhandedly. The key finding by the commission is finding of fact 29, referring to four previous misconduct cases where the punishment at most was a temporary suspension:

> 29. *Even-Handedness of the Rule.* The Commission majority is concerned about the even-handedness in which the Department is applying its rules. There is evidence that employees in past cases involving dishonesty either received no suspension of duties or only temporary suspension of duties. Examples of more lenient punishment include an officer who fired shots at a stolen car and then misrepresented the facts was not suspended for the incident; an officer who did not notify authorities of the discharge of his service weapon, and only reported the incident when he learned that local police were investigating was not suspended but instead received a disciplinary transfer with no loss of pay; an off-duty officer was involved in

an encounter when her handgun was accidentally discharged, she initially denied it before reporting it to her chain of command and was given only 15 days suspension; and an officer, who denied using any force but was contradicted by three witnesses, received a one-day suspension for excessive force in a case where dishonesty was an issue. To date, no other employee has been terminated based on dishonesty. The Commission majority concludes the evidence does not support that the Department even-handedly applied its rules.

¶16 The superior court reversed finding of fact 29 for lack of evidentiary support. The superior court ruled as follows:

The Department correctly argues that the finding is not supported by substantial evidence. To the contrary, none of the cases cited by the Commission include a sustained finding of dishonesty (as opposed to other misconduct). Moreover, none of the cited cases involve a sustained finding of intentional dishonesty in an investigation regarding use of force. Nor did the Commission find that the misbehavior in the cited cases was either as serious as or more serious than Werner's dishonesty. In short, there is neither any evidence that other officers who either engaged in the same behavior or who were disciplined for dishonesty were treated differently.

¶17 We begin our review of the case by clarifying the standard of review used by an appellate court. An appellate court reviews the administrative decision on the record of the administrative tribunal, not of the superior court operating in its appellate capacity. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 29-30, 891 P.2d 29 (1995). We said in *Roberson* that review in cases such as this one is limited to determining whether the commission acted arbitrarily, capriciously, or upon an inherently wrong basis. *Roberson*, 155 Wn. App. at 878. This was inaccurate. In articulating the standard of review in this manner, we relied on police disciplinary cases decided before 1989. In that year, the writ of review statute was amended and the standard of review changed, as we recognized in *Freeburg v.*

*City of Seattle*, 71 Wn. App. 367, 370-71, 859 P.2d 610 (1993). The parties in *Freeburg* contended that the inquiry is whether the underlying decision was arbitrary and capricious. Based on RCW 7.16.040, we concluded they were incorrect: "The respondents rely on cases decided under the prior statutory language which are now of limited, if any, precedential value." *Freeburg*, 71 Wn. App at 370 (footnote omitted).

¶18 The correct appellate standard of review of a commission's decision under a writ of review is controlled by RCW 7.16.120. *Hilltop*, 126 Wn.2d at 29. Under RCW 7.16.120, we review de novo whether the decision below was contrary to law and whether the factual determinations are supported by substantial evidence. *Hilltop*, 126 Wn.2d at 29. "Substantial evidence" is the existence of a sufficient quantity of evidence to persuade a fair-minded, rational person of the truth of the finding. *Hilltop*, 126 Wn.2d at 34. Under this standard, an appellate court is not to substitute its own judgment for that of the fact finder. *Hilltop*, 126 Wn.2d at 34.

## EVENHANDEDNESS

¶19 Werner contends that the superior court substituted its own judgment for the commission's. We disagree. The finding of the commission is not supported by substantial evidence.

¶20 In finding of fact 29, two of the allegedly comparable cases the commission relied on are not adequately documented in the record of the commission hearing. The first case involved "an officer who fired shots at a stolen car and then misrepresented the facts." The record contains a transcript of testimony given at a previous hearing before the commission by Mark McCarty, the department's human resource director. The testimony concerns an undated case where the officer's report that he was in danger from the car was not supported by a video at

the scene. McCarty testified that the officer was not charged with dishonesty. There is no evidence of the discipline imposed. In finding that this officer was "not suspended for the incident," the commissioners must have relied on evidence outside the record. The second case they cited involved "an officer who did not notify authorities of the discharge of his service weapon, and only reported the incident when he learned that local police were investigating." This case is entirely outside the evidentiary record. No evidence about the case was admitted at the hearing, though it was mentioned in Werner's posthearing brief submitted to the commission.

¶21 The commission, being an administrative body acting in a quasi-judicial capacity, must base its decision on evidence introduced at the hearing. *Kaiser Aluminum & Chem. Corp. v. Dep't of Labor & Indus.*, 45 Wn.2d 745, 747, 277 P.2d 742 (1954). "A civil service board or other hearing tribunal cannot act upon its own information, and nothing can be considered as evidence that was not introduced at the hearing of which the parties had notice, or at which they were present." EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 45:125, at 845 (3d ed. 2011). If findings are based on the experience of the tribunal's members rather than the evidence, then "any effective court review is at an end." *Kaiser*, 45 Wn.2d at 747. This rule ensures fairness to the litigants by allowing them a chance to contest the evidence. Because the commission's findings concerning the first two cases cited are without support in the record, we cannot consider them.

¶22 The third and fourth cases are documented in the record, but they do not involve officers disciplined for violating the honesty rule. According to the department's disciplinary action reports, both were disciplined for other types of misconduct. The third case concerns an incident in March 2005. The officer got into a confrontation while off-duty and accidentally discharged the firearm she was carrying. When officers came to the scene, she denied being

armed or firing a shot, but shortly thereafter she reported the truth to her superiors. The sustained disciplinary allegations were of conduct unbecoming an officer, failure to report discharge of a firearm, and carrying an unauthorized weapon. She was given a 15 day suspension. The disciplinary report states that the officer's acceptance of responsibility for her conduct and her excellent work record were taken into consideration in arriving at the disciplinary decision. The fourth case concerns an incident in February 2004. The officer was disciplined by a 1 day suspension for a sustained allegation of unnecessary use of force while arresting an individual for refusing to leave the scene of a noise disturbance. The proposed disposition memo from an investigator notes conflicting reports by witnesses. Although the officer denied using any force, the memo concludes that the preponderance of the evidence indicated some unwarranted use of force.

¶23 Unlike the officers in the two cases discussed above, Werner was disciplined for a sustained finding of dishonesty. The honesty rule under which he was charged specifically states that a sustained finding of dishonesty may be grounds for termination. The rule contains within itself an important justification for differentiating discipline for dishonesty from discipline for other forms of misconduct: "Sustained allegations of dishonesty may affect an employee's ability to serve as an effective witness in court." The honesty rule—section 5.001(V) of the policy and procedure manual—is the only rule involved in Werner's case and the only rule mentioned in the commission's decision. Because the other officers were not disciplined under the honesty rule, their cases do not supply substantial evidence for a finding that the department does not apply that rule evenhandedly.

¶24 Werner argues the commission should be able to look past the formal accusations and findings in the previous cases and decide for itself what the officers were disciplined for. Otherwise, he argues, the department man-

agement will have unfettered discretion to impose inconsistent discipline on officers simply by varying its charging decisions. He envisions the department accusing an officer of violating the honesty rule when termination is the desired result while putting another label on the same kind of misconduct when aiming to impose a lesser form of discipline.

¶25 That potential problem is not presented in this case. The commission did not find that the department was differentially treating similarly situated officers through its charging decisions. In fact, the commission concluded that the investigation of Werner was "fair and adequate."

¶26 Chief Diaz testified before the commission that the department had fired individuals in the past for dishonesty. But, he testified, not all inaccurate statements by officers are violations of the honesty rule. There can be issues of memory. There can be cases (like the fourth case cited by the commission) where the department takes another person's word over the officer's as to whether the officer used force. There can be a "lie of omission," where the officer believes that an item of information is unimportant, or "somebody doesn't ask you the right question." Chief Diaz testified that in his judgment, Werner's lie was not in any of these categories. "I looked at those issues. But it just kept coming down to he was given a choice to tell the truth and he decided not to." When asked several times during the internal investigation whether he had used any other force besides his stun gun, Werner each time said he did not. Later, however, Werner admitted lying. Chief Diaz said, "And in a case where the officer actually admits that he did lie about that situation, I think that clearly puts it over the top."

¶27 We conclude that the cases where there was no sustained finding of dishonesty are not sufficiently similar to Werner's to persuade a rational and fair minded person that the department was applying the honesty rule unfairly. The superior court correctly resolved the issue raised

by the department's appeal. The commission's finding of uneven discipline is not supported by substantial evidence. We deny Werner's request to reinstate the commission decision.

¶28 In the alternative, Werner asks that the case be remanded to the commission for a new hearing. He contends the commission erred by using the preponderance of evidence standard, rather than the clear and convincing standard, in determining that he was dishonest. Werner also contends the commission erred by failing to consider whether the lie he told was material to the use of force charge for which he was being investigated.

■ ■ ¶29 Werner waived review of these issues by failing to bring an appeal from the commission's decision to superior court. Only the department appealed from the commission's decision. The only issue presented to the superior court was whether the commission erred by modifying the discipline. The commission's unchallenged finding of dishonesty is a verity on appeal. *Levine v. Jefferson County*, 116 Wn.2d 575, 581-82, 807 P.2d 363 (1991).

¶30 The finding of unevenhandedness being stricken, the sole remaining basis for the commission's decision is the finding that Werner's termination was unfair in light of his unblemished record. It is not clear the commission would have modified the discipline based on this finding alone. The superior court reversed and remanded this matter to the commission to determine whether termination of Werner was appropriate where there is no lack of evenhandedness in the department's disciplinary history. We affirm the superior court's decision in all respects and remand to the commission for additional findings and conclusions as directed by the superior court.

¶31 Affirmed.

GROSSE and ELLINGTON, JJ., concur.