# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>B.V.W.<br><br>               Petitioner. | No. 54112-2-II<br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — A jury determined that BVW was gravely disabled. The court committed him to involuntary care for 180 days. On appeal, he argues that the State failed to prove by clear, cogent, and convincing evidence that he was gravely disabled. We conclude that substantial evidence supports the jury's verdict, and therefore we affirm.

## FACTS

BVW was involuntarily admitted to Western State Hospital after a court determined he lacked competency to aid in his own defense. Near the end of his prior commitment period, Dr. Nagavedu Raghunath and Dr. Tiffany Mohr petitioned the court to commit BVW for an additional 180 days.

Dr. Mohr and Dr. Raghunath diagnosed BVW with schizoaffective disorder. They based BVW's diagnosis on episodes of delusional thinking. BVW believed that water contained sperm and due to that had refused to drink fluids and shower. BVW's delusional thinking also led him to deny he had a mental disorder. BVW's tendency to become hyperverbal supported his

diagnosis. While BVW was in a hyperverbal state, he would speak very quickly and would become agitated and aggressive.

At trial, Dr. Mohr and Dr. Raghunath testified that BVW was gravely disabled based on his behavior at the hospital. In addition to the delusions mentioned above, Dr. Mohr based her conclusion that BVW was gravely disabled on a number of incidents and communications between Western State Hospital staff and BVW.

For example, BVW had masturbated in the hospital hallway in view of residents and staff on two occasions. BVW had threatened to kill one of the nightshift staff after being asked to keep his voice down to avoid aggravating his peers. He made similar threats up to the week prior to his commitment trial. BVW had made threatening comments to his peers as well, asking whether they wanted to fight. Staff had to intervene to prevent further escalation. BVW had also urinated in a fellow resident's room after being asked to leave a group meeting due to disruptive behavior. BVW's aggressive behavior and refusal to accept other residents' boundaries led to physical altercations with other residents.

Dr. Mohr testified that these incidents were a direct result of BVW's mental disorder. Both Dr. Mohr and Dr. Raghunath testified that BVW refused to acknowledge he had a mental disorder, and he told staff that if he is released, he will not continue medical care or continue his medication. When BVW had previously refused to take his medication, his mental health deteriorated, forcing the State to acquire a medication override. Dr. Raghunath testified that BVW must continue his medication to safely function.

When asked how he intended to remain safe if released, BVW told Dr. Mohr that he would carry a utility knife. Additionally, he said that to make money for food he would seek work as a ranger on an island, which he refused to identify.

BVW also suffered from hyponatremia. Hyponatremia is a sodium deficiency that can lead to mental changes and seizures. As a result, hospital staff limited BVW's fluid intake. BVW manipulated staff using his hyponatremia by threatening to drink water when he would become agitated and aggressive. According to Dr. Raghunath, BVW lacked insight into the potential serious consequences of hyponatremia, and refused to work with internists at the hospital to manage the condition. Based on the above evidence, Dr. Mohr and Dr. Raghunath testified that they believed BVW would be unable to care for himself if released.

The jury found by clear, cogent, and convincing evidence that BVW was gravely disabled. The court committed him for 180 days. BVW appeals.

ANALYSIS

I.    GRAVELY DISABLED

BVW argues that the State failed to satisfy its evidentiary burden by failing to present clear, cogent, and convincing evidence that BVW's release would either create a danger of serious physical harm or that he would experience severe deterioration in routine functioning. We disagree.[1]

A.    Standard of Review

In a civil commitment proceeding, the State has the burden of proving that a person is gravely disabled by clear, cogent, and convincing evidence. *In re Det. of D.W.*, 6 Wn. App. 2d 751, 756, 431 P.3d 1035 (2018). This standard means that the State must show that it is "highly probable" that the person is gravely disabled. *In re Involuntary Treatment of A.J.*, 196 Wn. App.

---

[1] BVW first argues that his case is not moot. We agree. Involuntary civil commitment cases are not moot on appeal even after the commitment period has ended because such commitments may be used as evidence in subsequent proceedings. *See In re Det. of M.K.*, 168 Wn. App. 621, 629, 279 P.3d 897 (2012); RCW 71.05.245(3).

79, 82, 383 P.3d 536 (2016). On appeal, we "'will not disturb the trial court's findings of grave disability if supported by substantial evidence which the lower court could reasonably have found to be clear, cogent and convincing.'" *D.W.*, 6 Wn. App. 2d at 757 (internal quotation marks omitted) (quoting *In re Det. of LaBelle*, 107 Wn.2d 196, 209, 728 P.2d 138 (1986)). We defer to the trier of fact on the persuasiveness of the evidence and witness credibility. *In re Matter of Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014). "Substantial evidence is the existence of a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." *Seattle Police Dep't. v. Werner*, 163 Wn. App. 899, 907, 261 P.3d 218 (2011).

### B.      Legal Principles

RCW 71.05.020(23) defines when a person is gravely disabled:

'Gravely disabled' means a condition in which a person, as a result of a behavioral health disorder: (a) Is in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

To commit an individual under RCW 71.05.020(23)(a), the petitioner must present recent evidence that the individual, if released, would fail or be unable to provide for their essential, basic needs including food, clothing, shelter, and medical care. *In re Detention of M.K.*, 168 Wn. App. 621, 630, 279 P.3d 897 (2012). Such failure must create a high probability of causing the individual serious physical harm unless they are committed, and it must result from a mental disorder. *Id*.

Similarly, under RCW 71.05.020(23)(b), the State must present recent evidence that the individual has suffered a significant loss of cognitive or volitional control leading to an inability to seek essential medical care if released. *M.K.*, 168 Wn. App. at 630. "'To justify commitment, such care must be shown to be *essential* to an individual's health or safety and the evidence should indicate the harmful consequences likely to follow if involuntary treatment is not ordered.'" *Id.* at 630 (quoting *LaBelle*, 107 Wn.2d at 208).

C.     Analysis

We conclude that substantial evidence supports the jury's finding that based on clear, cogent, and convincing evidence BVW is gravely disabled under RCW 71.05.020(23)(a) and (b).

1.     Subsection (a)

Turning first to subsection (a) of RCW 71.05.020(23), the jury's verdict that BVW was gravely disabled is supported by substantial evidence. Dr. Raghunath's testimony shows that BVW's medication was required for him to safely function. However, even though he carried a diagnosis of schizophrenia, BVW did not believe he had a mental disorder and had told Dr. Mohr that if he were released, he would not seek care or continue his medication. When BVW had previously refused medication, his symptoms worsened. Even when on medication, BVW's aggressive behavior had led to physical altercations with other residents. BVW also stated that, if released, he intended to carry a utility knife to stay safe, which was the only safety measure he articulated. Without staff to monitor and intervene in such altercations outside the hospital, BVW's behavior and inclination to carry a weapon was likely to lead to serious physical harm.

If released, BVW also risked serious physical harm due to his condition. In addition to his mental condition, BVW had hyponatremia, which required consistent medical monitoring and fluid restriction. BVW refused to take his condition seriously. He instead used it to manipulate

hospital staff and refused to work with an internist to control it independently. Without care, BVW risked aggravating his mental disorder and developing seizures, both of which could lead to serious physical harm.

The evidence presented at trial showed that if BVW were released, he would be unable to provide for his essential care, which was likely to result in serious physical harm. Lastly, such failure resulted from his delusional thinking, a symptom of his mental disorder.

2. Subsection (b)

Turning next to subsection (b), the jury's decision that BVW was gravely disabled under this subsection is also supported by substantial evidence. The State presented recent evidence showing multiple examples of BVW's loss of volitional control. He publicly masturbated, urinated in a peer's room, became verbally aggressive to peers, and threatened to kill staff. BVW also admitted that he would not seek medical care if released because he refused to acknowledge that he had a mental disorder. Such refusal showed that BVW was unable to seek care. Such care was essential for BVW's safety as it significantly improved his mental functioning.

BVW argues that under RCW 71.05.020(23), the treatment for his mental disorder was not essential because his care was only partially effective. However, BVW cites to no authority that under RCW 71.05.020(23) care must be completely effective to qualify as essential. In addition, the evidence showed that BVW's prior refusal to take medication resulted in the worsening of his condition that required the State to seek a medication override.

CONCLUSION

We hold that substantial evidence supports the jury's finding that BVW was gravely disabled based on clear, cogent, and convincing evidence. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Veljacic, J._
Veljacic, J.

We concur:

_Maxa, J._
Maxa, P.J.

_Cruser, J._
Cruser, J.