IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In the Matter of the Welfare of ) | |
| JAMES DONALD CUDMORE, ) | No. 32024-3-III |
| ) | |
| Alleged Vulnerable Adult, ) | |
| ) | |
| v. ) | UNPUBLISHED OPINION |
| ) | |
| JOHN C. BOLLIGER, ) | |
| ) | |
| Appellant. ) | |

SIDDOWAY, J. — Attorney John Bolliger appeals the trial court's entry of an order

of protection preventing him from having contact with a former client, James Cudmore.

He argues that the trial court's findings that his former client was a "vulnerable adult"

and that Mr. Bollinger committed acts of "abandonment, abuse, neglect, and/or financial

exploitation" were not supported by substantial evidence; that the trial court applied the

wrong burden of proof; and that the trial court abused its discretion in awarding attorney

fees. Second Amended Appellant's Br. at 1. We find no error or abuse of discretion and

affirm.[1]

---

[1] We deny Mr. Bolliger's January 26, 2016 Mot. for this Appeal, and its 2 Other "Linked" Appeals, to be Analyzed and Decided at the Same Time. The relief requested would unnecessarily delay the disposition of this appeal, something our commissioner could not have anticipated when, in June 2014, she expressed the expectation that Mr. Bolliger's several appeals would be considered and decided at the same time.

FACTS AND PROCEDURAL BACKGROUND

On July 2, 2013, then 84-year-old Donald Cudmore visited attorney John Bolliger with the stated intention of altering his estate plan. This was the first time the two men had met. A friend of Mr. Cudmore's had both referred him to Mr. Bolliger and arranged the appointment.

Tim Lamberson, who is Mr. Cudmore's stepson and served as his attorney-in-fact under a power of attorney executed in 2008, learned that Mr. Cudmore was being taken to financial institutions by the friend and was making changes to his estate plan. Mr. Lamberson became concerned. On July 12, he filed a petition for a full guardianship of his stepfather and obtained an ex parte order appointing C. Wayne May to serve as guardian ad litem.[2]

On July 18, Mr. May petitioned the court to appoint Rachel Woodard to serve as

---

[2] We take note of several adjudicative facts from the guardianship proceeding, *In re Cudmore*, cause no. 13-4-00260-9, Benton County Super. Ct. Under ER 201(c), courts may take judicial notice of adjudicative facts, whether requested to or not. Courts applying the parallel federal rule have recognized "that a 'court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quoting *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992) (internal quotation marks and citation omitted)); *accord* 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 201.9 (5th Ed. 2007) (noting distinction between consulting the record of another case to determine whether it *contains* something and consulting the record to determine whether disputed facts were found to be true). We take judicial notice only of the fact that relevant developments occurred in the guardianship proceeding.

Mr. Cudmore's lawyer in the guardianship proceeding. Mr. Bolliger filed a petition to have himself appointed as Mr. Cudmore's lawyer on the same day. By July 18, Mr. Bollinger had prepared, and Mr. Cudmore had signed, durable powers of attorney appointing Mr. Bolliger as Mr. Cudmore's attorney-in-fact for financial and health care decision-making.

On July 19, Judge Salvador Mendoza heard the competing petitions to appoint a lawyer to represent Mr. Cudmore in the guardianship proceeding. The court appointed Ms. Woodard as Mr. Cudmore's lawyer, adding a handwritten notation to his order that "John Bolliger's motion for appointment as Mr. Cudmore's counsel is denied." Clerk's Papers (CP) at 34.

On July 22, Mr. Bolliger filed a motion for reconsideration of the trial court's choice of lawyer for Mr. Cudmore, renewing his request that he receive the appointment. On August 12, the court filed its order denying the motion.

On September 13, Shea Meehan, the lawyer representing Mr. Lamberson in the guardianship proceeding, personally filed a petition for an order of protection against Mr. Bolliger under RCW 74.34.110, seeking to limit Mr. Bolliger's contact with Mr. Cudmore. In his petition and a declaration filed in support, Mr. Meehan stated he had been reluctant to seek the order, but that the following actions, among others, had caused him to conclude Mr. Cudmore was at risk:

- In early July 2013, Mr. Bolliger drafted powers of attorney for Mr.

3

Cudmore that named Mr. Bolliger as his attorney-in-fact for financial and medical matters;

- Mr. Bolliger had also drafted a new will for Mr. Cudmore, naming himself the personal representative of the estate;

- Notwithstanding the superior court's appointment of Ms. Woodard as Mr. Cudmore's lawyer in the guardianship proceeding, Mr. Bolliger continued to visit and have meetings with Mr. Cudmore and to talk to Mr. Cudmore about the subject matter of the guardianship case;

- Although not a party or a lawyer for any party in the guardianship proceeding, Mr. Bolliger filed motions and notes for the docket during August and September, purporting to act on behalf of Mr. Cudmore;

- Despite a request by Ms. Woodard for a copy of Mr. Bolliger's file on Mr. Cudmore, and despite a court order in the guardianship proceeding directing Mr. Bolliger to send copies of his complete file relating to Mr. Cudmore to Ms. Woodard and Mr. May before 1:30 p.m. on September 6, Mr. Bolliger had failed to produce the file as ordered;

- On September 9, Mr. Bolliger issued and caused subpoenas duces tecum for Mr. Cudmore's financial account records to be served on Edward Jones and HAPO Community Credit Union despite not being a party or representing any party in the proceeding in which he purported to issue the subpoenas; and

- On September 11, Mr. Bolliger procured (or caused to be procured) Mr. Cudmore's execution of a declaration prepared by Mr. Bolliger that supported Mr. Bolliger and positions he had taken in the guardianship matter; this, despite not having received consent from Ms. Woodard to speak with her client.

The petition for protection was also supported by a declaration of Mr. Lamberson. He testified that while Mr. Cudmore had initially "seemed quite happy" with Ms. Woodard as his lawyer, Mr. Bolliger's continued contact with Mr. Cudmore left Mr. Cudmore believing that Mr. Bolliger was his only lawyer and that "Rachel Woodard is merely a friend that stops in to visit on occasions." CP at 96. He stated that although he

4

and his stepdad had returned to having a "good, but guarded relationship," each of Mr. Bolliger's visits left Mr. Cudmore "agitated and argumentative." *Id.* As an example, he told the court that after one of Mr. Bolliger's contacts, his stepfather demanded that Mr. Lamberson "drop[ ] the charges against him." *Id.* He testified that anxiety about legal issues was waking Mr. Cudmore up at night and made him reluctant to ask for help from his caregivers, because he feared they were taking notes to determine whether he was incapacitated.

The superior court granted a temporary order for protection.

At the hearing on the request for a permanent order, the trial court considered the written submissions of the parties, heard from Mr. Meehan and Mr. Bolliger, and personally questioned Mr. May and Ms. Woodard.

Ms. Woodard told the court that although she had obtained Mr. Cudmore's consistent assurance that he was comfortable with her, Mr. Cudmore had told her on multiple occasions that he would like Mr. Bolliger to still be his attorney—yet on other occasions, he had been "extremely upset with Mr. Bolliger and would not want him to be his attorney anymore." Report of Proceedings (RP) at 10. Asked whether Mr. Bolliger's continued contact was interfering with her representation, she said,

> My opinion is yes. I find it to be—[Mr. Cudmore] to have extreme stress. When I go and see him, there is sometimes when he is very very stressed out, and it's dealing with court and feeling like he needs to find ways to get here to yell at the court for what they have done, because he has

5

said that he would like John to be his attorney. It's very stressful for him,
and I can see the stress.

RP at 11.

When Mr. May was asked by the court about Mr. Cudmore's attitude toward Mr.
Bolliger, he said Mr. Cudmore was conflicted: vacillating from not caring whether Mr.
Bolliger was his lawyer, to wanting Mr. Bolliger to represent him, to not wanting Mr.
Bolliger to represent him. Asked by the court about Mr. Cudmore's mental and
emotional status, Mr. May described psychological testing that he had caused to be
performed, on which Mr. Cudmore performed "very poorly." RP at 13. He described the
tests as revealing that Mr. Cudmore has "severe memory problems," is "very conflicted,"
"becomes very emotional on different topics," and "has problems with his perception of
reality." *Id.* As further evidence of Mr. Cudmore's limitations, Mr. May told the court
he had witnessed Mr. Cudmore starting to undress in the dining room of the assisted
living center where Mr. Cudmore resided, The Manor at Canyon Lakes (the Manor),
before being stopped by staff. When asked whether he believed Mr. Cudmore's
continued contact with Mr. Bolliger was harmful, Mr. May answered, "Yes, sir, I do."
RP at 14.

After allowing Mr. Bolliger to examine Ms. Woodard and hearing extensive
testimony from Mr. Bolliger, the court stated it would sign the order of protection "based
upon the petition[ and] based upon the testimony today." RP at 29. It expressed

6

particular disapproval of Mr. Bolliger's contact with Mr. Cudmore about the

guardianship following the court's appointment of Ms. Woodard, which it observed was

"very concerning." *Id.*

Mr. Bolliger appeals.

## ANALYSIS

Mr. Bolliger assigns error as follows:

> The superior court (1) erred by failing to establish (by clear, cogent, and convincing evidence) that Mr. Cudmore was a "vulnerable adult," (2) abused its discretion in entering its 5-year [vulnerable adult protection order] against Mr. Bolliger (because substantial evidence does not exist to support its findings that Mr. Bolliger had "committed acts of abandonment, abuse, neglect, and/or financial exploitation" of Mr. Cudmore), and (3) therefore abused its discretion in imposing $2,714.64 in attorneys' fees and costs against Mr. Bolliger.

Second Amended Appellant's Br. at 1. We address the assigned errors in the order

stated.

### I. *"Failure to establish" that Mr. Cudmore was a vulnerable adult*

The Abuse of Vulnerable Adults Act, chapter 74.34 RCW, was enacted to protect

vulnerable adults who "may be subjected to abuse, neglect, financial exploitation, or

abandonment by a . . . person who has a relationship" with them. RCW 74.34.005(1), (6)

(legislative findings). One way to protect a vulnerable adult is to petition for an order for

their protection. RCW 74.34.110. Any "interested person" may file a petition for such

an order. RCW 74.34.110(1). The petition must be accompanied by an affidavit or

7

declaration stating specific facts and circumstances that demonstrate the need for the relief sought. RCW 74.34.110(3).

We review a superior court's decision to grant a protection order for abuse of discretion. *In re Knight*, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). We review a trial court's findings of fact for substantial evidence. *Knight*, 178 Wn. App. at 936-37.

Mr. Bolliger first challenges the trial court's finding that Mr. Cudmore was a vulnerable adult. "Vulnerable adult" is a defined term in chapter 74.34 RCW, so we must rely on the statutory definition. "It is an axiom of statutory interpretation that where a term is defined we will use that definition." *United States v. Hoffman*, 154 Wn.2d 730, 741, 116 P.3d 999 (2005).

"'Vulnerable adult' includes a person: (a) Sixty years of age or older who has the functional, mental, or physical inability to care for himself or herself; or . . . (d) Admitted to any facility." RCW 74.34.020(17). "Facility," itself a defined term, means

> a residence licensed or required to be licensed under chapter 18.20 RCW, assisted living facilities; chapter 18.51 RCW, nursing homes; chapter 70.128 RCW, adult family homes; chapter 72.36 RCW, soldiers' homes; or chapter 71A.20 RCW, residential habilitation centers; or any other facility licensed or certified by the department [of social and health services].

RCW 74.34.020(5).

8

Evidence of Mr. Cudmore's admission to and residence at the Manor is sufficient to support the trial court's finding that he was a vulnerable adult. Were that not dispositive, Mr. Cudmore's age and the stage of his dementia would serve as substantial evidence. At the time of the court's findings, he was 84 years old, required assisted living, and, according to evidence presented to the trial court, suffered from moderate to severe dementia, serious memory problems, and problems with his perception of reality.

In the section of Mr. Bolliger's brief devoted to this assignment of error, his principal argument deals with the standard of proof: he contends the trial court erred by requiring Mr. Meehan to support his petition by only a preponderance of the evidence rather than by clear and convincing evidence. He relies on *Knight*, 178 Wn. App. 929. It is doubtful that *Knight* applies to this case[3] or that Mr. Meehan's evidence falls short under either standard. But Mr. Meehan correctly invokes RAP 2.5(a), under which we generally refuse to consider arguments made for the first time on appeal. Mr. Bolliger argues the decision in *Knight* postdated the hearing on the protective order and thus could not have been cited, but he misapprehends RAP 2.5(a). It is irrelevant to RAP 2.5(a) that

---

[3] *Knight* holds that where an allegedly incapacitated person actively opposes an order for his or her protection, due process requires proof of facts warranting protection by clear and convincing evidence. In *Knight*, the alleged incapacitated person, the alleged abuser/exploiter, and the petitioner, were all present at the hearing "and each was represented by separate counsel." 178 Wn. App. at 934. It is apparent from the opinion that the allegedly incapacitated person in *Knight* opposed the order of protection through, and with the opportunity to obtain counsel from, her independent lawyer.

no published decision supported Mr. Bolliger's position at the time he was in the trial court. Even without *Knight*, he could have made the liberty and autonomy interest-based argument that succeeded in that case, but he did not. We will not entertain the argument for the first time on appeal.

*II.  Whether substantial evidence supports the court's findings that
Mr. Bolliger "committed acts of abandonment, abuse,
neglect, and/or financial exploitation"*

Mr. Bolliger next argues that substantial evidence does not support the trial court's finding that he abused or exploited Mr. Cudmore.

The order for protection entered by the court was prepared using the preprinted, statutorily-required permanent order for protection form.[4] The preprinted form states, "The Court Finds Based Upon the Court Record: . . . Respondent committed acts of abandonment, abuse, neglect and/or financial exploitation of the vulnerable adult." CP at 182. Given the "and/or," substantial evidence need support only one of the wrongful acts listed in the finding.

RCW 74.34.020(2) defines "[a]buse" as "the willful action . . . that inflicts injury . . . intimidation, or punishment on a vulnerable adult." "Mental abuse" includes willful action that coerces, intimidates or isolates a vulnerable adult. RCW 74.34.020(2)(c).

---

[4] Form WPF VA-3.015, Order for Protection—Vulnerable Adult (ORPRTVA) (revised June 2012); *see* RCW 74.34.115(1) (directing the Administrative Office of the Courts to develop standard forms).

10

"Exploitation" includes acts of "exerting undue influence over a vulnerable adult causing the vulnerable adult to act in a way that is inconsistent with relevant past behavior." RCW 74.34.020(2)(d).

"Financial exploitation" includes "improper use" or "control over" a vulnerable adult's "property, income, [or] resources," "for any person's or entity's profit or advantage other than for the vulnerable adult's profit or advantage." It includes "[t]he use of . . . undue influence by a person or entity in a position of trust and confidence with a vulnerable adult to obtain or use [such] property, income [or] resources . . . for the benefit of a person or entity other than the vulnerable adult," and "[t]he breach of a fiduciary duty, including, but not limited to, the misuse of a power of attorney . . . that results in the unauthorized appropriation, sale, or transfer of the property, income [or] resources . . . of the vulnerable adult for the benefit of a person or entity other than the vulnerable adult." RCW 74.34.020(6).

Here, within six days of their first meeting, Mr. Bolliger had prepared durable powers of attorney by which Mr. Cudmore appointed Mr. Bolliger his attorney-in-fact. By two weeks later, Mr. Bolliger had prepared a new will for Mr. Cudmore designating Mr. Bolliger the personal representative of his estate, and had met with Mr. Cudmore to secure the will's execution. Despite the trial court's appointment of Ms. Woodard to represent Mr. Cudmore in the guardianship action, Mr. Bolliger continued to meet with Mr. Cudmore and prepared one unsworn and one sworn declaration for Mr. Cudmore's

11

execution without first obtaining Ms. Woodard's consent to communicate with her client.

Manifestly, Mr. Bolliger is not the only lawyer in Benton County capable of representing Mr. Cudmore. Once the guardianship was commenced and professionals were appointed by the court, Mr. Bolliger should have allowed them to perform their work without interference—particularly in light of his disfavored act of drafting estate documents that made himself the attorney-in-fact and personal representative for an elderly individual, suffering from dementia, whom he had just met.

Thirty years ago, our Supreme Court observed that a lawyer's act of drawing a will in which he is appointed executor

> [c]annot help but engender suspicion and, as here, lengthy and expensive will contests. While we do not hold[ t]hat this violates the Code of Professional Responsibility, it is an activity of which we disapprove, in which we believe no attorney should engage, and which should not occur in the future.

*In re Estate of Shaughnessy*, 104 Wn.2d 89, 97, 702 P.2d 132 (1985).

RPC 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

From the facts that Mr. Bolliger drafted powers of attorney and a will giving him control over Mr. Cudmore's assets; refused, when requested, to provide copies of his file

12

on Mr. Cudmore to Mr. May[5] and Ms. Woodard; and engaged in an ongoing effort to influence Mr. Cudmore and affect decisions in the guardianship proceeding in violation of civil and ethical rules; a reasonable inference of financial exploitation could be drawn by the trial court.

From the testimony of Ms. Woodard and Mr. May that Mr. Cudmore's attitude toward Mr. Bolliger would swing from one extreme to the other, the trial court could reasonably infer that Mr. Bolliger's contacts with Mr. Cudmore were coercive, intimidating or otherwise unduly influential on Mr. Cudmore.

The court could reasonably draw the same inference from Mr. Lamberson's testimony that Mr. Bolliger's contacts left his stepfather paranoid and defensive. The court could also reasonably find from Mr. Lamberson's testimony that Mr. Bolliger's contacts were isolating Mr. Cudmore from his stepson and court-appointed lawyer—a

---

[5] Among provisions of the order appointing Mr. May as guardian ad litem was the following:

> The Guardian ad Litem shall have access to all information regarding the Alleged Incapacitated Person. Such information may contain, but is not limited to . . . matters of legal representation of the Alleged Incapacitated Person . . . . By this Order, copies of information regarding the Alleged Incapacitated Person shall be released to the Guardian ad Litem.

*In re Cudmore*, Order Appointing Guardian Ad Litem and Notice of Hearing, cause no. 13-4-00260-9, Benton County Super. Ct. (July 12, 2013) at 5-6.

form of "mental abuse" under RCW 74.34.020(2)(c).

And all of the evidence presented to the trial court, apart from Mr. Bolliger's testimony and the declaration he penned for Mr. Cudmore, was that Mr. Bolliger's continued contacts and efforts at involvement in the guardianship were causing extreme stress and anguish for Mr. Cudmore.

In reviewing an order of protection, we defer to the trial court on the persuasiveness of the evidence, witness credibility, and conflicting testimony. *Knight*, 178 Wn. App. at 937. Substantial evidence supports the trial court's finding of abuse and/or financial exploitation.

### *III. Trial court's attorney fee award*

Finally, Mr. Bolliger challenges the trial court's award of attorney fees to Mr. Meehan. Under RCW 74.34.130(7), the court may require the respondent to reimburse the petitioner for costs incurred in bringing the action, including a reasonable attorney's fee. Mr. Bolliger's sole argument is that because the trial court abused its discretion when it entered the protection order, it necessarily abused its discretion when it awarded fees. The trial court did not abuse its discretion in entering the protection order.

### *Attorney fees on appeal*

Mr. Meehan requests an award of reasonable attorney fees and costs on appeal pursuant to RAP 18.1 and RCW 74.34.130(7). Under RAP 18.1, we may award attorney fees and costs if authorized by applicable law. We award Mr. Meehan reasonable

14

attorney fees on appeal as authorized by RCW 74.34.130(7) subject to compliance with RAP 18.1(d).

Mr. Bolliger requests an award of attorney fees under RAP 18.1 and CR 11. CR 11 is intended for use in superior court, not in the appellate court. *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 750, 218 P.3d 196 (2009). Mr. Bolliger fails to identify a basis for sanctions under any court rule. His request for fees is denied.

We affirm and award Mr. Meehan attorney fees on appeal subject to compliance with RAP 18.1(d).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

15