FILED
COURT OF APPEALS
DIVISION II

2014 JAN 14 AM 9: 25

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of: | No. 43687-6-II |
| DAGMAR O. KNIGHT, | |
| An Alleged Vulnerable Adult/Appellant, | |
| ERIC KNIGHT, | |
| Respondent, | |
| v. | |
| TOR K. KNIGHT, | PUBLISHED IN PART OPINION |
| Appellant. | |

PENOYAR, J. — Dagmar Knight and her son, Tor Knight, appeal the superior court's entry of a vulnerable adult protection order. Dagmar's[1] other son, Eric Knight, petitioned for the vulnerable adult protection order on Dagmar's behalf against Tor. Dagmar and Tor argue that Eric was required to prove the need for the protection order by clear, cogent, and convincing evidence and the superior court imposed the most restrictive conditions in the protection order in violation of RCW 74.34.005(6). Eric, Dagmar, and Tor request attorney fees on appeal. In the published portion, we hold that a petitioner's standard of proof for a vulnerable adult protection order opposed by the alleged vulnerable adult is clear, cogent, and convincing evidence because the protection order implicates the vulnerable adult's liberty and autonomy interests. Accordingly, we remand for the superior court to determine if Eric met his burden. We address the remaining issues in the unpublished portion. We hold that the conditions imposed in the

---

[1] To avoid confusion, this opinion refers to the parties by their first names. We intend no disrespect.

protection order are valid because the superior court is not required to impose the least restrictive conditions under RCW 74.34.005(6). Finally, we deny the parties' requests for attorney fees.

FACTS

I.     BACKGROUND

Dagmar is 83 years old and lives in one of three homes on her family estate, called Lillegaard, in Lakebay, Washington. Wayne Knight, Dagmar's late husband, passed away on May 8, 2010, leaving a trust with approximately four million dollars in assets to support Dagmar, which Wells Fargo manages. Dagmar also received approximately $109,000 in life insurance in July 2010.

Dagmar has two living sons, Eric and Tor. Tor, the younger of the two, suffers from schizophrenia and has a criminal history, including several assault convictions and an unlawful possession of a firearm conviction. Tor resides in a house on the Lillegaard property, located approximately 100 yards away from Dagmar's house, which Dagmar and Wayne built for him.

Dagmar and Wayne executed a power of attorney in May 2007, which authorized Eric to automatically act as Dagmar's attorney in fact upon Wayne's death. In March 2011, Eric became concerned for Dagmar's physical and financial well-being due to Tor's behavior and the manner in which he was spending Dagmar's money. Eric continued to communicate his concern to his extended family, to Tor, and to Dagmar; however, Eric's attempts at resolving the issues were unsuccessful.

On February 23, 2012, Eric petitioned for a vulnerable adult protection order and a guardianship. In his petition for the protection order, Eric alleged Tor was unduly influencing Dagmar, isolating her, and threatening her physical well-being. In support of his allegations, Eric provided a recent medical report, in which a licensed clinical psychologist concluded

2

Dagmar suffers from dementia. Eric also submitted 13 declarations from family and close friends; Dagmar's financial records; several letters he wrote to Dagmar, Tor, and Tor's mental health counselor, Dr. Donnelly; and a handwritten letter from Dagmar to Eric.

In the declarations, multiple family members stated they do not visit Dagmar's home anymore nor do they have their traditional family holiday celebration there because of threats Tor made to various family members and because Tor generally makes the family members feel uncomfortable and unsafe. One particular incident mentioned in several declarations concerned a day during the summer of 2009 when Tor assaulted Erin Knight, Dagmar's step-granddaughter. Dagmar and Wayne both attempted to stop the assault and were injured by Tor in the process. The police were called and Tor was arrested. Several family and friends also noted that Dagmar is not as talkative or stops talking when Tor is present.

Family and friends also expressed concern as to Dagmar's safety and well-being. Dagmar had major surgery for cancer in spring 2011. Tor, without telling any family, brought Dagmar home from the hospital early and left her alone on the couch at her home. Dagmar's cousin and Eric both visited Dagmar in the days after Tor brought her home. They both stated that Dagmar was too weak to get off the couch on her own, that she had soiled her gown, that she was in a lot of pain, and that she was disoriented. Family also noted that Tor told them he took Dagmar's pain medication after her surgery and threw it away because he did not believe she needed it.

Eric and family members also alleged Tor was unduly influencing Dagmar. Eric stated Dagmar received $109,000.00 in life insurance in July 2010 and by February 2011 Tor had spent almost $90,000.00 of it. Eric stated that Tor spent $5,000.00 to $7,000.00 a month of Dagmar's money between May 2011 and February 2012. Eric also experienced trouble getting Dagmar's

debit card back from Tor, Eric had to cancel Dagmar's credit card, and Eric had to correct Dagmar's putting Tor's name on her bank account. Additionally, a family friend witnessed Tor coerce Dagmar into stopping at the bank to get him money when he drove them on lunch outings. Eric also provided a copy of Dagmar's bank statements, which demonstrate that Dagmar wrote checks to Tor between May 2011 and February 2012 totaling $6,904.00; paid $14,000.00 to Dr. Donnelly, Tor's mental health counselor; spent $2,589.17 at liquor stores; and paid $4,865.00 for an apartment in Tacoma Tor no longer needed. Dagmar also paid all Tor's bills and expenses.

In contrast, Dagmar maintained she did not want a protection order against Tor. A family friend opined that Dagmar seemed oriented to him when he saw her on March 4, 2012, and that he believed Tor was very helpful to Dagmar. Tor's community corrections officer submitted a declaration stating he never observed any problems between Tor and Dagmar and that Tor was helpful to Dagmar. Dagmar and Tor also submitted a letter from Adult Protective Services stating that someone reported that Dagmar was being mistreated, but Adult Protection Services found the claim unsubstantiated.

The superior court entered a temporary protection order on February 23, 2012, restraining Tor, among other conditions, from entering Dagmar's residence, having any contact with Dagmar, or from coming within 1,000 feet of Dagmar's residence and the 26-acre Lillegaard estate. Dagmar learned Eric filed a vulnerable adult protection order and guardianship the next day, and Tor took Dagmar to an attorney where Dagmar revoked Eric's power of attorney.

Tor was served with the temporary protection order on February 27, 2012. The order effectively prevented him from living in his house, which was less than 1,000 feet away from Dagmar's house. Tor failed to remain at least 1,000 feet from the 26-acre Lillegaard estate and

was arrested for violating the temporary protection order. Eric also stated he changed Dagmar's phone number after the superior court entered the temporary protection order because several of Tor's friends were calling Dagmar on Tor's behalf in violation of the temporary protection order.

## II.    PROCEDURAL HISTORY

On March 8, 2012, a superior court commissioner conducted a hearing on the protection order petition. Dagmar, Tor, and Eric were present at the hearing and each was represented by separate counsel. Also present at the hearing was John O'Melveny, Dagmar's appointed guardian ad litem; Jennifer McIver, appearing on behalf of Wells Fargo Bank, which manages the trust; and Sarah Atwood, appearing because a bank account she managed for Dagmar was blocked by the temporary protection order.

Although Dagmar, Tor, and Eric did not testify at the hearing,[2] the commissioner heard argument from their attorneys as well as from Ms. McIver and Ms. Atwood. Other than to state that he concluded Dagmar should have an attorney appointed on her behalf in the guardianship proceeding, Mr. O'Melveny refrained from providing the court with an opinion because he had just begun his investigation in the guardianship action.

No party requested that the commissioner hold an additional evidentiary hearing under RCW 74.34.135(1), which provides that when the vulnerable adult objects to "the protection sought in the petition, then the court may . . . order additional evidentiary hearings." In his response to Tor's motion to dismiss, Eric stated the superior court could hold an evidentiary hearing, but Eric did not request that the commissioner hold one. At the hearing on the motion for reconsideration, Dagmar's attorney stated that he did not request an evidentiary hearing because he thought the commissioner denied an evidentiary hearing, and Tor's attorney stated he

---

[2] Additionally, it does not appear from the record that they were denied the opportunity to testify.

never requested an evidentiary hearing because the commissioner initially denied Eric's petition for the protection order.

The superior court commissioner dismissed Eric's protection order petition, determining instead that the guardianship case could adequately address the concerns presented and provide the protections needed. The commissioner stated that he was concerned about both brothers' conduct and thus also ordered that "Tor Knight is prohibited from accessing any bank account of [Dagmar] Knight via check, debit card or wire, [and] . . . that neither brother shall socially alienate their mother by their conduct or attempt to influence her." Clerk's Papers (CP) at 322.

Eric filed a motion to revise the commissioner's ruling. Due to various factors, the hearing on revision was not held until June 15, 2012. During the interim between the March 8, 2012 and June 15, 2012 hearings, no party, including Dagmar's guardian ad litem, requested that the superior court hold an evidentiary hearing. At the hearing on revision, however, Dagmar and Tor twice stated the superior court needed to hold an evidentiary hearing. Eric countered that it was at the superior court's discretion to hold an evidentiary hearing.

Based on the record before the commissioner and the transcript of the hearing before the commissioner, the superior court granted Eric's motion to revise and stated "given Tor's criminal history, his failure to comply with the ex-parte temporary restraining order, the spending of the insurance proceeds, his mother's insurance proceeds on him, her physical isolation on the property and his proximity to her in that physically isolated situation" that it "should grant the revision in this case and provide for [Tor's] restraints from contact with [Dagmar]." Report of Proceedings (RP) (June 15, 2013) at 60. The superior court further stated "it's clear that we're having a situation of undue influence. And given [Tor's] past history, both with respect to

6

43687-6-II

mental illness and criminal history, we're not in a position to take unreasonable chances in this regard." RP (June 15, 2013) at 61.

Among other conditions, the protection order restrains Tor from "committing or threatening to commit physical harm, bodily injury, [and] assault" against Dagmar; restrains Tor from "committing or threatening to commit acts of abandonment, abuse, neglect, or financial exploitation" against Dagmar; excludes Tor from Dagmar's residence; and prohibits Tor from coming within 1,000 feet of Dagmar's residence and 1,000 feet of the 26-acre Lillegaard estate. CP at 364. The protection order also restrains Tor from unsupervised contact with Dagmar, but authorized Dagmar and Tor to have supervised visitation.

The superior court denied Dagmar's and Tor's motion for reconsideration of the protection order. Dagmar and Tor timely appealed and moved for an emergency stay of the superior court's entry of the vulnerable adult protection order, which our commissioner denied.

## ANALYSIS

### I.   STANDARD OF REVIEW

On appeal from the decision of a superior court revising the superior court commissioner's order, we review the superior court's decision, not the commissioner's order. *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). We review the superior court's decision to grant or deny a protection order to determine if the superior court's decision is manifestly unreasonable or exercised on untenable grounds, or for untenable reasons. *Hecker v. Cortinas*, 110 Wn. App. 865, 869, 43 P.3d 50 (2002); *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). We review the superior court's findings for substantial evidence. *Scott v. Trans-Sys., Inc.*, 148 Wn.2d 701, 707-08, 64 P.3d 1 (2003). We defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony. *Morse v.*

7

*Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003); *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 108, 864 P.2d 937 (1994) (quoting *State v. O'Connell*, 83 Wn.2d 797, 839, 523 P.2d 872 (1974)). We review questions of law de novo. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 880, 73 P.3d 369 (2003).[3]

II.     STANDARD OF PROOF FOR VULNERABLE ADULT PROTECTION ORDER

Dagmar and Tor first argue that contested vulnerable adult protection orders implicate the vulnerable adult's due process rights and thus the petitioner must prove the need for a protection order by clear, cogent, and convincing evidence. Dagmar and Tor further argue that Eric failed to prove by clear, cogent, and convincing evidence that Dagmar is a vulnerable adult or that Eric is an interested person as defined by RCW 74.34.020(10), (17)[4].

We hold the standard of proof for proving whether the adult is a vulnerable adult in a case contested by the alleged vulnerable adult is clear, cogent, and convincing evidence and remand for the trial court to determine whether Eric met his burden.[5]

The Abuse of Vulnerable Adults Act[6] (Act) was enacted to protect vulnerable adults who "may be subjected to abuse, neglect, financial exploitation, or abandonment by a family member." *See* RCW 74.34.005(1) (legislative findings). One means of protection is a vulnerable

---

[3] Dagmar and Tor argue the standard of review on appeal is de novo because the superior court never held a formal factfinding hearing. However, Dagmar and Tor improperly cited cases that discuss when the superior court uses a de novo standard when reviewing the superior court commissioner's decision and not the appropriate standard of review on appeal.

[4] The superior court has discretion to determine whether the petitioner is an interested person under RCW 74.34.020(10) and RCW 74.34.110(1). We hold the superior court properly exercised its discretion in finding Eric to be an interested person.

[5] We specifically make no comment on the standard of proof when a petition is not opposed by the alleged vulnerable adult.

[6] Chapter 74.34 RCW.

adult protection order. RCW 74.34.110. "A vulnerable adult, or interested person on behalf of the vulnerable adult, may . . . [file] a petition for an order for protection in superior court." RCW 74.34.110(1). The petitioner must allege specific facts and circumstances that demonstrate the need for the relief sought. RCW 74.34.110(2). An interested person is a person who demonstrates to the court's satisfaction that (1) he is interested in the welfare of the vulnerable adult; (2) he has a good faith belief that the court's intervention is necessary; and (3) the vulnerable adult is unable, due to incapacity, undue influence, or duress at the time the petition is filed, to protect her own interests. RCW 74.34.020(10). The Act, however, does not state the necessary standard of proof for a vulnerable adult protection order.

The legislature intended that the Act protect those who are unable to care for themselves and whose physical or mental disabilities have placed them in a dependent position. *See* RCW 74.34.005 (legislative findings). In light of this legislative objective, the Act often applies in the context of protecting elderly persons "from abuse, neglect, financial exploitation, and abandonment by family members, care providers, and other persons with whom the vulnerable adult has a relationship." *Calhoun v. State*, 146 Wn. App. 877, 889, 193 P.3d 188 (2008). The Act lists examples of relief that the superior court may order, such as excluding the respondent from the vulnerable adult's residence, prohibiting contact with the vulnerable adult by the respondent, and prohibiting the respondent from knowingly coming within a specified location. RCW 74.34.130(2)-(4).

Similarly, in the guardianship statutes the legislature recognizes that "some people with incapacities cannot exercise their rights or provide for their basic needs without the help of a guardian." RCW 11.88.005. Thus, under the guardianship statutes, the superior court may

appoint a guardian for persons who are deemed incapacitated if the individual is at risk of personal or financial harm.[7] RCW 11.88.010.

The legislature's express intent with regard to guardianships is "to protect the liberty and autonomy" of all persons, including those with "incapacities" and unique needs. RCW 11.88.005. As such, the legislature stated that persons' "liberty and autonomy should be restricted through the guardianship process only to the minimum extent necessary to adequately provide for their own health or safety, or to adequately manage their financial affairs." RCW 11.88.005. Because ordering a guardianship for an incapacitated person affects the person's liberty and autonomy, the legislature specifically stated the standard of proof in a contested guardianship proceeding is clear, cogent, and convincing evidence. RCW 11.88.045(3).

As in this case, it is common for a petitioner to seek a vulnerable adult protection order at the same time as filing a petition to establish a guardianship under chapter 11.88 RCW. *See, e.g., Endicott v. Saul*, 142 Wn. App. 899, 176 P.3d 560 (2008). Both the Act and the guardianship statutes are concerned with the personal and financial health of vulnerable or incapacitated adults. Additionally, just as the legislature recognized that imposing restrictions on the incapacitated person in a contested guardianship case restricts an individual's liberty and autonomy interests, so too does granting a protection order against the vulnerable adult's wishes.

The protection order may prevent the vulnerable adult from freely interacting with the person against whom the protection order is granted. It also may prevent the vulnerable adult from giving gifts or providing support to the restrained person or inviting the restrained person

---

[7] A person may be deemed incapacitated "if the individual has a significant risk of personal harm based upon a demonstrated inability to adequately provide for nutrition, health, housing, or physical safety." RCW 11.88.010(1)(a). A person may also be deemed incapacitated if the "individual is at significant risk of financial harm based upon a demonstrated inability to adequately manage property or financial affairs." RCW 11.88.010(1)(b).

10

onto her property. Thus, because a contested vulnerable adult protection order case implicates the vulnerable adult's liberty and autonomy interests like a guardianship does, the standard of proof for a vulnerable adult protection order contested by the alleged vulnerable adult is clear, cogent, and convincing evidence, as it is with a guardianship. We remand to the superior court to determine if Eric proved by clear, cogent, and convincing evidence that Dagmar is a vulnerable adult in need of a protection order under chapter 74.34 RCW.

Because the superior court is reviewing the vulnerable adult protection order anew and not on a motion for revision, it is free to hold such additional hearings as it finds appropriate on remand. We affirm the conditions imposed by the protective order but the superior court may modify or add conditions on remand as it deems necessary.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Although, in the published portion, we remand for the superior court to determine if Eric met his burden, we address the following issues in the unpublished portion of the opinion because they may be relevant on remand.

43687-6-II

## I.  LEAST RESTRICTIVE RESTRAINTS

Dagmar and Tor make several arguments that the superior court made no effort to consider less restrictive alternatives to the conditions it imposed in the protection order.[8]  We disagree because the superior court is not required to impose the least restrictive conditions possible and the superior court here imposed restrictions allowed under RCW 74.34.130, which it deemed necessary for Dagmar's protection.

After an interested person petitions for a protection order on behalf of a vulnerable adult, the superior court must order a hearing on the petition.  RCW 74.34.110(1), .120(1).  When the vulnerable adult objects to the protection order at the hearing, the superior court may dismiss the petition, take additional testimony or evidence, or order an evidentiary hearing.  RCW 74.34.135(1).

If the superior court "determines that the vulnerable adult is not capable of protecting . . . her person or estate in connection with the issues raised in the petition or order, . . . the court shall order relief consistent with RCW 74.34.130 as it deems necessary for the protection of the vulnerable adult."  RCW 74.34.135(4).  When ordering relief that is "inconsistent with the expressed wishes of the vulnerable adult, the court's order shall be governed by the legislative

---

[8] Dagmar and Tor contend the "court ordered restraints in this case violate constitutional doctrine of least restrictive restraint."  Appellants' Reply Br. at 23.  To support this argument, they cite two cases that discuss least restrictive restraints in reference to closures of public trials and to an anti-harassment order case that requires the superior court to grant relief that is warranted by the facts and to not provide relief for nonparties that is not justified by the facts.  Because Dagmar and Tor did not provide meaningful argument in their brief or support this constitutional argument with relevant legal authority, we need not consider it.  *State v. Bonds*, 174 Wn. App. 553, 567, 299 P.3d 663 (quoting *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992)), *review denied*, 178 Wn.2d 1011, 311 P.3d 26 (2013) ("'Parties raising constitutional issues must present considered arguments to this court.'").

12

findings contained in RCW 74.34.005."[9] RCW 74.34.135(4). Under the Act, the superior court may order relief as it deems necessary for the protection of the vulnerable adult, including, but not limited to:

> (1) Restraining respondent from committing acts of abandonment, abuse, neglect, or financial exploitation against the vulnerable adult;
>
> (2) Excluding the respondent from the vulnerable adult's residence for a specified period or until further order of the court;
>
> (3) Prohibiting contact with the vulnerable adult by respondent for a specified period or until further order of the court;
>
> (4) Prohibiting the respondent from knowingly coming within, or knowingly remaining within, a specified distance from a specified location.

RCW 74.34.130.

---

[9] RCW 74.34.005 states:

> The legislature finds and declares that:
>
> (1) Some adults are vulnerable and may be subjected to abuse, neglect, financial exploitation, or abandonment by a family member, care provider, or other person who has a relationship with the vulnerable adult;
>
> (2) A vulnerable adult may be home bound or otherwise unable to represent himself or herself in court or to retain legal counsel in order to obtain the relief available under this chapter or other protections offered through the courts;
>
> (3) A vulnerable adult may lack the ability to perform or obtain those services necessary to maintain his or her well-being because he or she lacks the capacity for consent;
>
> (4) A vulnerable adult may have health problems that place him or her in a dependent position;
>
> (5) The department and appropriate agencies must be prepared to receive reports of abandonment, abuse, financial exploitation, or neglect of vulnerable adults;
>
> (6) The department must provide protective services in the least restrictive environment appropriate and available to the vulnerable adult.

First, Dagmar and Tor contend the superior court was required to consider the least restrictive alternatives when imposing conditions under the protection order.[10] The provision Dagmar and Tor reference, however, applies only to the department of social and health services. It provides "[t]he *department* must provide protective services in the least restrictive environment appropriate and available to the vulnerable adult." RCW 74.34.005(6) (emphasis added). Thus, when the department, not the superior court, provides protective services, it must do so in the least restrictive environment appropriate.

The Act, instead, expressly allows the superior court to "order relief as it deems necessary for the protection of the vulnerable adult." RCW 74.34.130. In this case, the superior court determined that "given Tor's criminal history, his failure to comply with the ex-parte temporary restraining order, the spending of the insurance proceeds, his mother's insurance proceeds on him, her physical isolation on the property and his proximity to her in that physically isolated situation" that it "should grant the revision in this case and provide for [Tor's] restraints from contact with [Dagmar]." RP (June 15, 2013) at 60. The superior court further stated "it's clear that we're having a situation of undue influence. And given [Tor's] past history, both with respect to mental illness and criminal history, we're not in a position to take unreasonable chances in this regard." RP (June 15, 2013) at 61.

---

[10] Dagmar and Tor also argue that RCW 74.34.135 requires the superior court to "craft an order that is the least restrictive" when the vulnerable adult objects to the protect order. Appellants' Br. at 25. RCW 74.34.135(1), however, states that when the vulnerable adult objects to the protection order the superior court has discretion regarding how to proceed and may dismiss all or part of the requested relief, may take additional testimony or evidence, or may order further evidentiary hearings. It imposes no requirement that the superior court must order the least restrictive conditions.

14

Among other conditions, the protection order restrains Tor from "committing or threatening to commit physical harm, bodily injury, [and] assault" against Dagmar; restrains Tor from "committing or threatening to commit acts of abandonment, abuse, neglect, or financial exploitation" against Dagmar; excludes Tor from Dagmar's residence; and prohibits Tor from coming within 1,000 feet of Dagmar's residence and 1,000 feet of the Lillegaard estate. CP at 364. The protection order also restrains Tor from unsupervised contact with Dagmar, but allows for Dagmar and Tor to have supervised visitation. These conditions, and the others the superior court ordered, are consistent with the restraints expressly authorized in the Act and also with what the superior court deemed necessary for Dagmar's protection. In sum, nothing in the superior court's order was inconsistent with RCW 74.34.005. And because the superior court imposed restrictions the Act allows, which the evidence supported were necessary for Dagmar's protection, it did not violate RCW 74.34.130.

Second, Dagmar and Tor argue that the superior court failed to consider the impact the vulnerable adult protection order would have on Tor. Appellant's Br. at 25, 27 ("The court failed to provide a maternal substitute for Tor for his sake and for his mother's sake. . . . A short term order designed to address Tor's needs would be supportive of Dagmar's parenting rights, rather than destructive.") The superior court is not required to consider the impact on the respondent. Instead, the superior court's consideration is properly focused on the protection and well-being of the vulnerable adult: "The stated purpose of the [Act] is to protect vulnerable adults from abuse, financial exploitation, and neglect." *Endicott*, 142 Wn. App. at 919 (citing RCW 74.34.110).

Lastly, Dagmar and Tor contend that a "respondent may be restrained from [the] vulnerable adult's residence, but not his own home." Appellants' Reply Br. at 23. They argue that Tor has "state and federal protected rights to be free from unreasonable governmental intrusion into his home or private affairs," which were violated when he was forced to move out his house. Appellants' Reply Br. at 23 (citing U.S. CONST. Amend IV; WASH. CONST. art. 1, § 7). While the protection order did not expressly require that Tor move out of his house, it effectively required him to do so because the order prohibited him from coming within 1,000 feet of Dagmar's residence or 1,000 feet of the 26-acre Lillegaard property, which is where his house was located. "Parties raising constitutional issues must present considered arguments to this court." *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992). "'[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" *Johnson*, 119 Wn.2d at 171 (quoting *In re Rosier*, 105 Wn.2d 606, 616, 717 P.2d 1353 (1986)). Because Dagmar and Tor did not substantiate this constitutional argument and did not cite to any legal authority that a person's federal and state rights are violated when a protection order makes the person move out of his house, we need not address it.

Further, a vulnerable adult protection order is to be issued to protect the best interests of the vulnerable adult, not any respondent. The superior court orders relief it deems necessary for the protection of the vulnerable adult. RCW 74.34.130. Here, the superior court stated it was concerned about Dagmar's "physical isolation on the property and [Tor's] proximity to her in that physically isolated situation." RP (June 15, 2013) at 60. Because the evidence supported the conclusion that isolating Dagmar on the Lillegaard property with Tor was not safe, prohibiting Tor from coming within 1,000 feet of the property was a proper exercise of the

16

superior court's discretion. Thus, we hold the superior court did not violate the Act when ordering the restrictions in this contested vulnerable adult protection order.[11]

## II.    ATTORNEY FEES

Eric requests attorney fees under RAP 18.1 and RCW 74.34.130(7).  RAP 18.1 permits attorney fees on appeal if applicable law grants the party the right to recover reasonable attorney fees.  Under RCW 74.34.130(7) we may order the respondent "to reimburse the petitioner for costs incurred in bringing the [protection order] action, including a reasonable attorney's fee," which extends to fees and costs on appeal.  *Endicott*, 142 Wn. App. at 929.  Because the superior court must still determine if Eric met his burden, he is not a prevailing party.  Thus, we deny Eric's request for attorney fees on appeal.

Dagmar and Tor request attorney fees under RCW 74.34.130.  RCW 74.34.130(7), however, only authorizes the court to award attorney fees from the respondent to the person who petitioned for the protection order.  Alternatively, Dagmar and Tor argue we should grant them attorney fees under the "equitable grounds articulated in the common law in bad faith actions." Appellants Br. at 28 (citing *Rogerson Hiller Corp. v. Port of Port Angeles*, 96 Wn. App. 918, 982 P.2d 131 (1999)).  Dagmar and Tor, however, do not provide meaningful argument on any of the theories of bad faith discussed in *Rogerson Hiller*.  They only stated that Dagmar has "suffered tremendously" due to Eric's allegations, that Dagmar takes offense to Eric's allegations, that she "is in the middle of a war with her own family and friends," and that Eric "misrepresented that he has her power of attorney." Appellants' Br. at 28.  Because they are not

[11] As we stated in the published portion of this opinion, on remand the superior court may modify or add to the conditions in the protection order as it deems necessary.

17

entitled to relief under RCW 74.34.130 and because they did not substantiate their argument that Eric brought the petition in bad faith, we deny Dagmar and Tor's request for attorney fees.

In the published portion, we hold that a petitioner's standard of proof for a vulnerable adult protection order opposed by the alleged vulnerable adult is clear, cogent, and convincing evidence, and we remand to the superior court to determine if Eric met his burden. In the unpublished portion, we hold that the conditions imposed in the protection order are valid because the superior court is not required to impose the least restrictive conditions under RCW 74.34.005(6). Finally, we deny the parties' requests for attorney fees.

Penoyar, J.

We concur:

Maxa, J.

Verellen, J.