# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of<br><br>R.H.,<br><br>                           Appellant. | No. 80098-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: September 30, 2019 |

APPELWICK, C.J. — R.H appeals an order mandating he undergo 180 days of involuntary treatment at Western State Hospital. He contends that the State has not shown substantial evidence that he is gravely disabled, and that he is being confined despite the trial court finding that less restrictive treatment was in his best interest. We affirm, but remand to the trial court to correct a scrivener's error in the involuntary commitment order.

## FACTS

R.H is a 66 year old man with schizoaffective disorder, bipolar type, and a history of polysubstance abuse. He was admitted to Western State Hospital on September 28, 2017. At that time, his 365 day less restrictive treatment order had been revoked after he was found by police near McChord Military Base threatening passersby in cars with a knife. R.H. has a history of over 20 hospitalizations, including 12 at Western State Hospital since 1991.

R.H. testified in his own defense at his hearing for involuntary treatment. During his testimony, he indicated his desire to leave Western State and live with his mother. He states that he didn't mind his medications even though they made him ill. He stated that he would attend an out-patient program if he were released into the community. He further stated that he does not "get into trouble" in the community, and that his troubles with police are the result of people setting him up.

Dr. Carole DeMarco, a psychologist at Western State Hospital, testified in support of the State's petition to order another 180 days of involuntary treatment. She testified that R.H had recently exhibited severe deterioration and loss of cognitive and volitional control, assaultive behavior, and refused to take medication. She also testified that R.H. had recently threatened staff, including threatening a social worker to the point where she went to the nurse's station out of fear of being harmed. R.H. followed the social worker and kicked the door after she had reached the nurse's station. The night prior to DeMarco's testimony, R.H. had postured as a boxer when told he would not be allowed outside to smoke. The next morning, he threw a milk carton towards the room where his treatment team was meeting.

DeMarco further testified that R.H. was not medication compliant, and had a history of going off his medications while in the community. She stated that she did not believe that R.H would be able to meet his basic health and safety needs in the community because his difficulty maintaining his medications makes him aggressive and assaultive. She also indicated that R.H. living with family was not

an option for discharge. Based on his history and recent behavior, DeMarco recommended that R.H. stay at Western State Hospital. She stated that his needs could not be met in a less restrictive alternative.

On April 26, 2018, the trial court ordered another 180 days of treatment at Western State Hospital. In its oral ruling, the court found that there was no realistic discharge plan and that less restrictive alternatives were not in R.H.'s best interest. It incorporated these oral findings in its written order. The court also stated in its written order that R.H. was not ready for discharge, and was not able to meet his basic health and safety needs in the community. However, it left unchecked the box that stated, "[l]ess restrictive alternative treatment is not in the best interest of the Respondent or others." The court found that R.H. was gravely disabled, evidenced by his inability to provide for his essential needs in the community and severe deterioration in routine functioning as a result of his mental disorder. R.H. appeals.

## DISCUSSION

R.H makes essentially two arguments. First, he argues that the State failed to present sufficient evidence that he was gravely disabled. Second, he argues that the trial court unconstitutionally ordered him detained despite finding that less restrictive treatment was in his best interest.

I. Sufficiency of Evidence

R.H. contends that the State has not presented sufficient evidence that he is gravely disabled under RCW 71.05.020(22). Therefore, he argues that his commitment order should be reversed. The State is required to prove the

3

requirements of involuntary commitment by clear, cogent, and convincing evidence. RCW 71.05.310.

A person may be committed for treatment of a mental disorder if they are "gravely disabled." In re Det. of LaBelle, 107 Wn.2d 196, 201-02, 728 P.2d 138 (1986). A person is gravely disabled if the person as a result of a mental disorder

> (a) [i]s in danger of serious physical harm resulting from a failure to provide for his or her essential human needs of health or safety; or (b) manifests severe deterioration in routine functioning evidenced by repeated and escalating loss of cognitive or volitional control over his or her actions and is not receiving such care as is essential for his or her health or safety.

RCW 71.05.020(22).

A trial court's findings of grave disability will generally not be disturbed on appeal if supported by substantial evidence that the trial court could have reasonably found to be clear, cogent, and convincing. LaBelle, 107 Wn2d at 209. We defer to the trial court on the persuasiveness of evidence, witness credibility, and conflicting testimony. In re the Vulnerable Adult Petition of Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

The trial court found that R.H. met both definitions of "gravely disabled." The court's factual findings do not indicate which facts support which definition. The State dedicates the majority of its argument to the definition in RCW 71.05.020(22)(b).

A finding that a person is gravely disabled under RCW 71.05.020(22)(b) is appropriate if they are showing severe mental deterioration of routine functioning evidenced by recent proof of loss of cognitive or volitional control. LaBelle, 107

Wn.2d at 208. A finding is also appropriate if they would not receive the care they need to maintain their health and safety if released. Id. The court may consider a person's history of decompensation in the community in making this determination. See In re Det. of C.K., 108 Wn. App. 65, 75, 29 P.3d 69 (2001).

The trial court found that R.H.'s violent behavior towards staff supported a finding of loss of cognitive and volitional control. DeMarco testified that R.H. had recently threatened a doctor and social worker on his ward. R.H. followed the social worker to the nurse's station and kicked the door to the nurse's station. He postured as a boxer towards staff when told he would not be allowed to go outside. He also threw a milk carton at staff.

The trial court further considered R.H.'s history of going off his medications and decompensating in the community. It also found that R.H. was refusing medication. The court found that R.H. had no realistic discharge plan. Considering this evidence, the trial court determined that R.H. was unable to meet his basic health and safety needs in the community.

Clear, cogent, and convincing evidence supports the trial court's determination that R.H. is gravely disabled under RCW 71.05.020(22)(b). Because this finding alone was a sufficient basis for the involuntary treatment order, we need not address whether there was substantial evidence to support a determination that R.H. was gravely disabled under RCW 71.05.020(22)(a).

## II. Less Restrictive Treatment

R.H. contends that he was involuntarily detained despite the trial court's finding that less restrictive alternative treatment would be in his best interest. The State argues that the trial court made no such finding, but rather committed a scrivener's error by failing to check the appropriate box.

In its oral ruling, the trial court specifically found that less restrictive treatment was not in R.H.'s best interest. It incorporated its oral findings into its written order. The court stated in its written order that R.H. "is not ready for discharge." It also wrote that R.H. is "[n]ot able to meet his basic health and safety needs in the community." Nowhere in its order did the court write that it intended to abandon its oral ruling that less restrictive alternative treatment was not in R.H.'s best interest. Rather, it left unchecked the box indicating that less restrictive alternative treatment was not in R.H.'s best interest. This oversight was an obvious scrivener's error.

Where there is no evidence in the record that an obvious scrivener's error prejudiced the person it affects, the proper remedy is remand to the trial court for correction. See State v. Moten, 95 Wn. App. 927, 929, 976 P.2d 1286 (1999). R.H. does not argue that he was prejudiced by this error. We find no prejudice from this scrivener's error.[1]

---

[1] R.H. also contends that RCW 71.05.320 is unconstitutional because it permits courts to involuntarily detain individuals despite finding that less restrictive alternative treatment is in their best interests. Because we find that the trial court did not find less restrictive alternative treatment was in R.H.'s best interest, we decline to address this constitutional argument.

We affirm, but remand to the trial court to correct the scrivener's error in the involuntary commitment order.

Appelwick, C.J.

WE CONCUR:

Leach, J.                Schindler, J.