IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | No. 39682-7-III |
| ASHLEY ALLEN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| FRANK JOSEPH ALLEN, | ) | |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Frank Allen was married to Ashley Allen and was step-father to Ms. Allen's daughter, Olivia.[1] Ms. Allen petitioned for, and was later granted, a sexual assault protection order based on allegations Olivia made against Mr. Allen. Mr. Allen appeals contending the trial court granted the petition without proper consideration of the evidence and statutory criteria. We disagree and affirm.

---

[1] To protect the privacy interests of Ms. Allen's daughter, we use a pseudonym when referring to her throughout this opinion. Gen. Order of Division III, *In re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses*, (Wash. Ct. App. June 18, 2012), https://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp& ordnumber=2012_001&div=III.

BACKGROUND

The parties married in December 2019. Ms. Allen has two children from a prior relationship, 10-year-old Olivia and a 12-year-old son. Mr. Allen also has two children from a prior relationship. On the morning of March 21, 2023, Ms. Allen found Olivia awake in her bed. When asked how she slept, Olivia responded, "[N]ot good because it felt like hands were touching [me] all night." Clerk's Papers (CP) at 9. Olivia told Ms. Allen that it felt like hands were all over her body as well as under her panties. Olivia first denied knowing who had touched her. Approximately 20 minutes later, Olivia approached Ms. Allen and, while crying, stated that she "woke up in the middle of it and 'Daddy was standing over me but he wouldn't do that to me.'" CP at 11. Olivia claimed Mr. Allen had given her "5 melatonin . . . that night before bed." CP at 11.

To ensure their safety, Ms. Allen and Olivia fled the family home. When Mr. Allen discovered their absence, he sent an e-mail to Ms. Allen explaining his concerns over what happened. In his e-mail, Mr. Allen disclosed that he caught Olivia masturbating and then later found her with "her shorts we[re] half way down and uncovered." CP at 13. On March 24, 2023, Ms. Allen filed a petition for a protection order on behalf of herself and Olivia. The court granted Ms. Allen a temporary protection order and scheduled a permanent protection order hearing for April 6, 2023.

Mr. Allen filed a declaration in response to Ms. Allen's petition. According to Mr. Allen, on the evening of March 20, 2023, the family had bedded down for the night. At

2

approximately 9:30 p.m., Mr. Allen arose from bed to relieve himself. While doing so, he heard sounds coming from Olivia's television set. Mr. Allen went upstairs to investigate and found Olivia masturbating on the couch. As Mr. Allen walked back downstairs, he cautioned Olivia "that she's going to go blind if she keeps doing that." CP at 32.

At approximately 2:30 a.m., Mr. Allen again awoke with a desire to micturate. En route to the washroom, Mr. Allen heard footsteps and what he believed to be sounds coming from Olivia's Nintendo. Again, Mr. Allen went upstairs to check on Olivia. This time he found Olivia laying on her side, asleep without any covers. Mr. Allen neared Olivia to cover her up and noticed she was wearing panties, yet her pajama bottoms were down. Mr. Allen attempted to pull up Olivia's pajama bottoms, causing her to waken and turn over. Mr. Allen found Olivia was secreting her Nintendo under the covers. As Mr. Allen returned to the downstairs, Olivia stated, "[P]lease don't tell mommy." CP at 33. Mr. Allen opted not to inform Ms. Allen about the Nintendo, that he pulled up Olivia's pajama bottoms, or to finding her masturbating.

Mr. Allen's declaration further detailed several highly personal matters related to Ms. Allen. Among the allegations, Mr. Allen claimed Ms. Allen lacked the desire to parent and possessed a propensity for promiscuity, as well as other details regarding her sexual proclivities. Mr. Allen also wrote of Ms. Allen's professional aspirations and about her negative treatment of Olivia. Mr. Allen further alleged that Olivia had

3

behavioral problems at home and school, often lying to avoid punishment. He claimed

Olivia would seek attention by stealing, fighting, cursing, and cheating. Mr. Allen

declared that Olivia must have been lying to her mother to avoid being punished.

Attached to Mr. Allen's declaration were several exhibits used to cast Ms. Allen and

Olivia in a negative light. Among the exhibits was an e-mail from Olivia's teacher

regarding a behavioral incident.

Mr. Allen was represented by an attorney at the April 6, 2023, hearing. The trial

judge commenced the hearing by stating she had read all of the documents that were

submitted, including Mr. Allen's declaration, and was going to grant the protection order.

Mr. Allen's attorney interjected to draw the court's attention to e-mail messages from

Olivia's school "regarding the child's truthfulness." Rep. of Proc. (RP) at 4. The court

requested Mr. Allen's counsel direct it to any records concerning Olivia's "lying

behavior." RP at 5. Counsel argued that, in light of Ms. Allen's actions and statements

regarding Olivia's behavioral issues, Olivia's statement to her mother should be

questioned.

The trial court found it disturbing that, in response to the petition, Mr. Allen

advanced derogatory comments about Ms. Allen. The court pondered why Mr. Allen

would have decided against informing Ms. Allen that he had caught Olivia masturbating

and later seeing her with her pajama pants down.

4

The court granted the petition for a protection order under RCW 7.105.010(32), finding by a preponderance of the evidence that Olivia had been subject to a nonconsensual sexual touching by Mr. Allen. The trial court's findings were largely based on the court's determination of witness credibility, or lack thereof. In part, the trial court found:

> Father's response of seeing child masturbate + then covering her up w/ pants down + chose not to tell mom—disclosed after mom left w/o knowing why she left. Court finds by a preponderance of the evidence that child was touched sexually in her private areas + this was unwanted touching.

CP at 71.

Mr. Allen timely appealed.

ANALYSIS

On appeal Mr. Allen argues that the trial court failed to make sufficient findings to support entry of the sexual assault protection order. We disagree.

We review the trial court's decision to grant or deny a protection order for abuse of discretion. *Nelson v. Duvall*, 197 Wn. App. 441, 451, 387 P.3d 1158 (2017). An abuse of discretion occurs when the decision is manifestly unreasonable or exercised on untenable grounds. *In re Matter of Knight*, 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014). "'A decision is based on untenable grounds or for untenable reasons if the trial court applies the wrong legal standard or relies on unsupported facts.'" *Nelson*, 197 Wn. App. at 451 (quoting *Salas v. Hi-Tech Erectors*, 168 Wn.2d 664, 669, 230 P.3d 583

5

(2010)); *Knight*, 178 Wn. App. at 936. "We defer to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony." *Knight*, 178 Wn. App. at 937 (citing *Morse v. Antonellis*, 149 Wn.2d 572, 574, 70 P.3d 125 (2003)). Additionally, "[w]e may affirm the trial court on any grounds established by the pleadings and supported by the record." *Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wn.2d 751, 766, 58 P.3d 276 (2002).

Under to RCW 7.105.225(1), "[t]he court shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved the required criteria." For sexual assault protection orders, the statute requires "that the petitioner has been subjected to nonconsensual sexual conduct or nonconsensual sexual penetration by the respondent." RCW 7.105.225(1)(b). Sexual conduct is defined as "[a]ny intentional or knowing touching or fondling of the genitals, anus, or breasts directly or indirectly, through clothing." RCW 7.105.010(32)(a). Sexual conduct is also defined as "[a]ny intentional or knowing touching of the clothed or unclothed body of a child under the age of 16, if done for the purposes of sexual gratification." RCW 7.105.010(32)(e).

Mr. Allen contends the trial court failed to articulate whether its findings were made under RCW 7.105.010(32)(a) or (e). We disagree. To alleviate concerns that a parent who bathes or dresses a child may violate RCW 7.105.010(32)(a), RCW 7.105.010(32)(e) includes a requirement that the touching of a child under the age of 16

be done for the sexual gratification or arousal of the respondent. According to Mr. Allen, the trial court failed to make such a finding.

The court did in fact "find[ ] by a preponderance of the evidence that [Olivia] was touched *sexually* in her private areas + this was unwanted touching." CP at 71 (emphasis added). Consequently, the record supports the trial court's findings under either section of RCW 7.105.010(32)(a) or (e).

The trial court's decision was grounded in who it deemed more credible. The trial court found it disturbing that, in responding to the petition, Mr. Allen advanced personal attacks against Ms. Allen and Olivia. Mr. Allen asserted Olivia had a documented history of being untruthful, yet when asked where the evidence could be found, Mr. Allen was able to show only that Olivia had behavioral issues. The court also questioned why Mr. Allen would delay informing Ms. Allen that Olivia was caught masturbating and later found half-dressed in bed.

Based on the circumstances surrounding the touching, it was not manifestly unreasonable for the trial court to find it was done for Mr. Allen's sexual gratification. First, the touching was preceded by Mr. Allen witnessing Olivia masturbate. Secondly, the touching occurred when Olivia was found asleep with her pajamas pulled down. Thirdly, Mr. Allen chose against disclosing to Ms. Allen that he had caught Olivia masturbating or found her with her pajamas down until Ms. Allen and Olivia moved from the family home. Moreover, the disclosure came without any prompting by Ms. Allen.

7

These facts led the trial court to find, on a more probable than not basis, Mr. Allen "touched [Olivia] *sexually* in her private areas." CP at 71 (emphasis added).

In deferring to the trier of fact on issues of witness credibility, the record supports a finding under RCW 7.105.010(32)(a)—that Mr. Allen intentionally or knowingly touched the genitals of Olivia directly or indirectly through her clothing. CP at 71. For similar reasons, the record supports a finding under RCW 7.105.010(32)(e)—that Mr. Allen knowingly touched Olivia's "private areas" for the purpose of sexual gratification. CP at 71.

Next, relying on *Roake v. Delman*, 189 Wn.2d 775, 408 P.3d 658 (2018), Mr. Allen claims that when "a respondent disputes a factual claim made in the petition, the court must hold a factfinding hearing and take evidence based on testimony and evidence submitted." Am. Br. of Appellant at 18. In *Roake*, our Supreme Court was called on, in part, to interpret the procedural due process provisions of former chapter 7.90 RCW 2018. *Roake*, 189 Wn.2d at 776.

In applying the holding in *Roake*, Mr. Allen argues that the court needed to "make specific findings under the new statute, RCW 7.105.101, et seq., which did not happen at the underlying hearing in this case" and that "[t]he court abused its discretion by not making clear findings as per RCW 7.105.101." Am. Br. of Appellant at 17. Because chapter 7.105 RCW is void of subsection .101, we decline to address the argument. *See*

8

No. 39682-7-III
*In re the Matter of Allen*


RAP 10.3(a); *Regan v. McLachlan*, 163 Wn. App. 171, 178, 257 P.3d 1122 (2011) ("We

will not address issues raised without proper citation to legal authority.").

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Cooney, J.

WE CONCUR:


_____
Pennell, J.

_____
Staab, J.

9