FILED
4/13/2026
Court of Appeals
Division I
State of Washington

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| In the Matter of the Durable Power of Attorney of<br><br>LUCILLE W. TERWILLIGER.<br><br>WILLIAM SHEEHAN, JR.,<br><br>　　　　　　Appellant,<br><br>　　　　v.<br><br>OHANA FIDUCIARY CORPORATION,<br><br>　　　　　　Respondent. | No. 87022-0-I<br>(consolidated with<br>Nos. 87401-2-I, 87529-9-I, and 87530-2-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |
| In the Matter of a Protection Order for<br><br>LUCILLE W. TERWILLIGER. | |
| In the Matter of the Guardianship/Conservatorship of<br><br>LUCILLE W. TERWILLIGER. | |

　　　　MANN, J. — This consolidated appeal stems from multiple proceedings related to the guardianship and protection of Lucille Terwilliger.  We affirm.

## I FACTS

### A First Guardianship Proceedings

Terwilliger is 90 years old and has been diagnosed with memory difficulty, major neurocognitive disorder, severe late onset Alzheimer's dementia without behavioral disturbance, and multiple comorbidities.

In September 2022, Terwilliger's son, Dennis Webster, filed a petition for guardianship and conservatorship for the protection of Terwilliger. Around that same time, Terwilliger eloped to Las Vegas or Reno and married appellant William Sheehan.[1] Terwilliger's family was not informed or invited to attend the wedding.

Scott Friedman was appointed as the court visitor and Rebecca Albright was appointed as Terwilliger's attorney. Dr. Janice Edwards performed a professional evaluation and prepared a report finding that Terwilliger had dementia, lacked capacity to enter into a marriage contract, and lacked testamentary capacity.

In July 2023, following a mediation, Terwilliger signed a non-judicial settlement agreement (NJSA). Under the NJSA, Ohana Fiduciary Corporation (Ohana) was selected as Terwilliger's agent under durable power of attorney (DPOA) for finances and health care. Ohana selected Quinn Wells for care management for Terwilliger.

### B Home sale proceedings

In late 2023, Wells visited Terwilliger several times and developed concerns about her well-being and her relationship with Sheehan. Terwilliger's primary care

---

[1] The record before us is in unclear on the date and location of the marriage. In Ohana's brief and pleadings they state the marriage occurred in Reno shortly after the guardianship was filed. In the March 16, 2024 evaluation by Dr. Janice Edwards, she states that Terwilliger and Sheehan eloped to Las Vegas to get married after the guardianship was filed.

provider also expressed "extreme concerns" about Terwilliger's well-being and the care provided by Sheehan. Wells explained that the state of Terwilliger's home was concerning. Moreover, Terwilliger's sons expressed concerns about Sheenan, including that he was very controlling and would restrict Terwilliger from seeing them.

Ohana and Terwilliger's sons determined that Terwilliger should move to an assisted living facility for her increased needs and because of their concern with Sheehan. Wells explained that they would need to sell Terwilliger's home to pay for her care. According to Wells, Terwilliger agreed to sell her residence.

Ohana learned that Terwilliger's prior attorney in the first guardianship case, Albright, visited Terwilliger and told her that the NJSA required Terwilliger to pay for Sheehan's care as well. Albright told Ohana that Terwilliger's preference was to remain home with Sheehan and that Terwilliger's sons should provide care for her in her home.

Ohana informed Albright of multiple concerns surrounding the conditions and safety of Terwilliger's home. Ohana explained that Terwilliger needed 24-hour care and that they would try to find a residence where Sheehan could live as well. Ohana also advised that the NJSA was not clear as to whether Terwilliger assumed the responsibility of Sheehan's care.

On May 3, 2024, Ohana filed a petition for instructions regarding the sale of Terwilliger's residence and other relief. Ohana requested that the trial court: (1) confirm Ohana's authority to act under the DPOA from the NJSA and take all actions necessary to sell the home, (2) instruct Ohana on whether Terwilliger had any legally enforceable long-term care obligation as to Sheehan under the NJSA, and (3) instruct Ohana on whether to commence a guardianship proceeding. Sheehan opposed the petition and

moved to immediately terminate the power of attorney and replace Ohana with a new certified guardian.

On July 3, 2024, after a hearing, the trial court entered the sale order. The trial court concluded that Terwilliger's increased medical expenses along with her estate's illiquidity made it necessary to promptly sell her home. The trial court authorized Ohana to list Terwilliger's home and take other actions to sell the house. The court explained that the NJSA did not appear to establish enforceable obligations requiring Terwilliger or Ohana to pay for Sheehan's care but that the issue should be brought by a separate petition or complaint. The court also found that Ohana was authorized to act as Terwilliger's attorney-in-fact until the appointment of a guardian and/or conservator. The court also directed Ohana to commence a guardianship/conservatorship petition. The court denied Sheehan's countermotion.

Ohana then listed Terwilliger's home for sale, and on August 4, 2024, Sheehan recorded a lis pendens on the home. Ohana then petitioned to cancel the lis pendens. The court entered an order canceling the lis pendens and awarded Ohana its attorney fees. Sheehan objected to attorney fees and moved to set aside the order, which the trial court denied.

### C  Second guardianship proceedings

In July 2024, as directed in the sale order, Ohana filed a petition for guardianship/conservatorship for Terwilliger. Ohana sought full guardianship for the benefit of Terwilliger because she lacked the ability to meet the essential requirements for her health and safety, and no other less restrictive alternative could meet her needs. Sean Hyde, the court visitor, filed a confidential report recommending that the court

appoint Ohana as Terwilliger's full guardian and conservator. Hyde noted that Terwilliger did not know her diagnosis or medications, was not familiar with her financial situation, did not know how long she had been married to Sheehan, and that less restrictive alternatives failed to protect her.

Albright filed a petition to appoint an attorney for Terwilliger explaining that Terwilliger had hired Albright to represent her in these proceedings. The trial court entered an order appointing an attorney for Terwilliger. Ohana moved for reconsideration but later requested the trial court not make a ruling because the parties entered into a CR2A agreement where the parties agreed that these guardianship proceedings would be resolved in a hearing by an ex parte commissioner.

On September 27, 2024, Sheehan moved to intervene and filed a response to the motion for reconsideration. Sheehan did not note the motion for intervention for hearing and the court never entered an order.

On October 18, 2024, after a hearing, the trial court entered a guardianship order. The court found that: (1) Terwilliger's previous DPOA naming Ohana as Terwilliger's power of attorney should be revoked in favor of full guardianship and full conservatorship, (2) Terwilliger's needs could not be met through a protective arrangement or less restrictive alternative, (3) a limited guardianship was not adequate, and (4) Ohana was a fit and proper entity to serve as Terwilliger's full guardian and conservator.

### D  Protection Order Proceedings

During the pendency of the second guardianship proceedings and home sale proceedings, Ohana sought a vulnerable adult protection order (VAPO) on behalf of

Terwilliger against Sheehan.  Ohana outlined in its petition that Sheehan had repeatedly exhibited aggressive and abusive behavior toward Terwilliger and that Terwilliger recently had bruises on her body.

On October 15, 2024, the trial court held a hearing on the protection order. Sheehan did not appear for the hearing and the trial court entered the protection order for one year prohibiting Sheehan from stalking Terwilliger, contacting Terwilliger besides supervised visits, and causing harm to Terwilliger.  The protection order was renewed on November 3, 2025, and the renewal expires on November 3, 2030.

Sheehan appeals.[2]

II

Sheehan first argues that the trial court erroneously concluded that Ohana had the authority to sell Terwilliger's residence.  We disagree.

The Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW governs procedures for resolving disputes in both guardianship estates and probate estates.  TEDRA empowers the court with full and ample power and authority to administer and settle all matters concerning guardianship estates.  See RCW 11.96A.020(1).

The NJSA provided that the parties agreed that Terwilliger must appoint a Washington state licensed certified professional guardian as her attorney-in-fact for finances and health care.  Ohana was selected as Terwilliger's agent under durable

---

[2] Sheehan appeals the following orders: (1) the trial court's order authorizing the sale of Terwilliger's home; (2) the trial court's order establishing a guardianship for Terwilliger; (3) the trial court's order issuing a protection order; (4) the trial court order denying Sheehan's motion to set aside order; and (4) the trial court's order on attorney fees.

power of attorney for finances and health care. Accordingly, Ohana had the ability to petition the court for instructions concerning its authority to sell Terwilliger's home. See RCW 11.125.160. Contrary to Sheehan's assertions, this was not relitigating of the NJSA but an authorized action as Terwilliger's DPOA. Moreover, Ohana petitioned the court for instructions on the sale and to confirm it had the power to sell the home, which the trial court concluded it did. Ohana presented evidence to demonstrate that Terwilliger needed to move to an assisted living facility and that her home needed to be sold in order to pay for that cost. Terwilliger did not have sufficient funds in her estate to support her increased needs. The trial court acted within its broad plenary power to authorize the sale and reject Sheehan's related arguments and motions.[3] The trial court did not abuse its discretion when it entered the sale order.[4]

III

Sheehan next argues the trial court erred when it entered the guardianship order. We disagree.

To appoint a guardian for an adult, a trial court must find the following by clear and convincing evidence:

> (i) The respondent lacks the ability to meet essential requirements for physical health, safety, or self-care because the respondent is unable to receive and evaluate information or make or communicate decisions, even with appropriate supportive services, technological assistance, or supported decision making;
>
> (ii) Appointment is necessary to prevent significant risk of harm to the adult respondent's physical health, safety, or self-care; and

---

[3] Sheehan makes several arguments that the trial court erred in decisions on continuances, discovery, and cross-examination related to the entry of the sale order. We disagree. The trial court acted within its broad plenary power to administer the case and settle the matter.

[4] We also note that Terwilliger's home has now been sold. As a result, this issue is also moot, and we cannot provide effective relief.

(iii) The respondent's identified needs cannot be met by a protective arrangement instead of guardianship or other less restrictive alternative.

RCW 11.130.265(1)(a). Additionally, a court order appointing a guardian must include:

a specific finding that clear and convincing evidence established that the identified needs of the respondent cannot be met by a protective arrangement instead of guardianship or other less restrictive alternative, including use of appropriate supportive services, technological assistance, or supported decision making.

RCW 11.130.310(1)(a). Further, an order establishing a full guardianship "must state the basis for granting a full guardianship and include specific findings that support the conclusion that a limited guardianship would not meet the functional needs of the adult subject to guardianship." RCW 11.130.310(3). Lastly, the burden of proof in guardianships and conservatorships is clear and convincing evidence. RCW 11.130.265(1)(a).

The trial court concluded that Ohana presented clear and convincing evidence that Terwilliger lacked the ability to meet the essential requirements for her physical health and safety. The trial court also concluded that Terwilliger was incapable of managing property or financial affairs. Sheehan does not challenge the trial court's findings of fact supporting the order, so those are verities on appeal. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Sheehan's disapproval of the order is insufficient. Substantial evidence supported the trial court's findings. The trial court did not err when it entered the guardianship order.

IV

Sheehan argues the trial court erred when it canceled his lis pendens because it had no statutory basis. We disagree.

A lis pendens is an instrument that has the effect of clouding title to real property. RCW 4.28.328(1)(a). Its purpose is to give notice to subsequent purchasers or encumbrancers of real property that there is an ongoing action affecting the property's title. See RCW 4.28.320. A court may, in its discretion, remove a lis pendens if three conditions are met: "(1) the action must be settled, discontinued, or abated, (2) an aggrieved person must move to cancel the lis pendens, and (3) the aggrieved person must show good cause and provide proper notice." Guest v. Lange, 195 Wn. App. 330, 336, 381 P.3d 130 (2016); RCW 4.28.320. We review decisions to cancel a lis pendens for abuse of discretion. Guest, 195 Wn. App. at 335.

Ohana petitioned the trial court for an order canceling Sheehan's lis pendens arguing that it was improper because there was no action pending that affected the title to real property. The superior court, after hearing arguments and considering all the documents submitted, issued an order granting the petition to cancel the lis pendens. The court found and concluded that this was not a matter affecting the title of real property and that it was filed in an attempt to undermine the court's sale order. We agree. Sheehan's lis pendens was improper and used to try to delay the sale of Terwilliger's home. There was no litigation surrounding the title of the home, which could authorize a lis pendens. Therefore, the trial court did not err when it canceled Sheehan's lis pendens.

V

Sheehan argues the trial court erred when it issued the protection order. We disagree.

-9-

We review a superior court's decision to grant or deny a petition for a VAPO for abuse of discretion.  In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014).

Ohana presented clear and convincing evidence that a VAPO was needed because of the growing concerns of Sheehan's conduct toward Terwilliger.  Ohana submitted sworn statements and declarations detailing Sheehan's behavior and abuse toward Terwilliger.  We do not reweigh evidence, and we defer to the trial court for credibility determinations.  Knight, 178 Wn. App. at 937.  Therefore, to the extent that Sheehan disagrees with the VAPO and asserts that it is not what he or Terwilliger wants or needs, that is not relevant to this analysis.  Ohana presented clear and convincing evidence on the need for a VAPO, therefore, there was no abuse of discretion.

VI

Sheehan argues the trial court erred when it awarded Ohana attorney fees.  We disagree.

RCW 4.28.328(2) permits a party to recover attorney fees on a motion to cancel a lis pendens.  Sheehan baldly asserts that the trial court's award of fees was unjustified.  The trial court calculated Ohana's fees using the lodestar method.  Sheehan presents no argument or legal authority as to why the amount of fees are unreasonable.  For that reason, the trial court did not err when it awarded fees.

VII

Both parties request attorney fees on appeal.  Ohana specifically requests fees on appeal under RCW 4.28.328(3) and RCW 11.96A.150(1).

RAP 18.1(a) allows a party to recover attorney fees incurred on appeal where applicable law permits such a recovery.  RCW 11.96A.150(1) provides an appellate court with discretion to award costs, including reasonable attorney fees, in guardianship litigation.  In re Guardianship of Mesler, 21 Wn. App. 2d 682, 720, 507 P.3d 864 (2022) (awarding fees to substantially prevailing party in guardianship appeal).  We exercise our discretion and grant Ohana's request for attorney fees on appeal, subject to compliance with RAP 18.1(d).  Because he does not prevail, we deny Sheehan's request for attorney fees.

We affirm.

_____
Mann, J.

WE CONCUR:

_____        _____
Birk, J.                                 Coburn, J.