

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Vulnerable Adult Protection Order for LAWRENCE EDWARD MADSEN. | )<br>)<br>)<br>) | No. 36344-9-III |
| VIKKI LEE VEGA, | )<br>) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| v. | )<br>)<br>) | |
| TED MADSEN, | )<br>) | |
| Respondent. | ) | |

SIDDOWAY, A.C.J. — Having made a long trip to Spokane from California, Vikki

Vega waived certain procedural rights in this action seeking a vulnerable adult protection

order against her rather than suffer a two-week delay. Following a hearing in which Ms.

Vega represented herself, the court commissioner granted only a portion of the relief that

was requested. Ms. Vega nonetheless appeals. We affirm.

FACTS AND PROCEDURAL BACKGROUND

In early August 2018, Adult Protective Services (APS) was investigating whether

Ed Madsen[1] was being financially exploited by his wife, Vikki Vega, from whom Ed had

_____

[1] Ed's given name is Lawrence Edward. His son Theodore, who commenced the
action below, goes by Ted. Because of the shared last name we refer to them, and to

been legally separated since 2013. Ed was living at Franklin Hills Rehabilitation, a Spokane nursing home, and had lived there for almost 18 months. Ms. Vega lived in Bodfish, in Kern County, California. Notwithstanding the couple's legal separation, Ms. Vega held durable medical and financial powers of attorney that Ed had signed in 2016. She was receiving most of Ed's monthly social security benefits as spousal maintenance and was receiving the balance of his benefits as his attorney-in-fact.

Ted Madsen, Ed's son and Ms. Vega's stepson, learned that Ms. Vega planned to travel to Spokane and remove Ed from Franklin Hills, which he believed was in an effort to thwart the APS investigation. Ted traveled to Spokane and on August 3 filed a petition for a vulnerable adult protection order (VAPO), obtaining an order that temporarily restrained Ms. Vega from having contact with Ed and from removing him from Franklin Hills. The order set a hearing on the petition for August 16. The temporary order was served on Ed on August 4. It was not served on Ms. Vega until August 11.

Ms. Vega and Ted's lawyer appeared in court at the time set for the hearing, but it was not clear that the hearing could proceed. Ms. Vega had not received the six court days' notice that is statutorily required. *See* RCW 74.34.120(2). She appeared with a stack of documents that Ted's lawyer had not had an opportunity to review. Ted's lawyer

Steven Madsen, Ed and Ms. Vega's son, by their first names. In Ed's and Ted's case, we use their preferred names, which were used in the proceedings below. No disrespect is intended.

2

wished to offer as evidence a declaration of Steven Madsen, Ed's and Ms. Vega's son,

that Ms. Vega had not had a chance to review. Ted's lawyer requested a two-week

continuance to cure the defect in notice and so that each side could review the other

side's proposed evidence.

Ms. Vega opposed a continuance, telling the court and Ted's lawyer that she had

traveled to Spokane to get Ed, concerned that he was not being given medication he

needed. She explained that she lived in a remote high-desert community,

> And it's a twelve-hundred mile trip. So I do not—I'm here. I do not want
> to appear by phone. And I don't want to continue this. I mean, I'm here.
> Let's do it. I mean, you brought the action. I appeared. Let's do it.

Report of Proceedings (RP) at 5.

The court commissioner explained to Ms. Vega that it would not proceed in light

of the service defect unless Ms. Vega wished to waive it. The commissioner also

indicated that a continuance would be required if Ms. Vega wished to offer her

documents as exhibits. Ms. Vega waived untimely service of the notice of hearing,

agreed to forgo offering her own documents as evidence, and agreed to the admission of

Steven's declaration to which she would respond with testimony. After recessing briefly

to review the court file, the commissioner proceeded with the hearing.

Ted's witnesses were Steven, by declaration; Pamalynn Brault, an APS

investigator; and Ms. Vega. Steven's declaration accused Ms. Vega of mistreating his

sister, who was Ed's and Ms. Vega's daughter; of being a spendthrift; and of

3

manipulating Ed, whose mind Steven characterized as "tainted by dementia and mental illness." Clerk's Papers (CP) at 23.

Ms. Brault testified that she had been assigned to investigate a report that Ed was a vulnerable adult and was being financially exploited by Ms. Vega. She testified that she had met with Ed and with his doctor and other personnel at Franklin Hills. She testified that Ed had been diagnosed with vascular dementia, a cognitive deficit, and on the basis of that diagnosis, his age (over 60), and the fact that he was living in a state-licensed facility, was a vulnerable adult. Ms. Brault testified that based on her investigation, Ed was receiving almost $3,400 a month in social security, of which Ms. Vega was receiving $2,400 a month as spousal maintenance. She testified that from the $1,000 or so a month that remained available for Ed, Ms. Vega was paying none to Franklin Hills, and he was over $10,000 in arrears to the facility. She testified that Ms. Vega had paid nothing on Ed's behalf to the facility during the entire 18 months he had resided there, and Ed was at risk of losing his housing.

Ms. Brault testified that she had obtained and reviewed copies of Ed's bank statements and determined that most of the transactions reflected on the statements occurred in California, where Ms. Vega resides, and that no transactions were identifiable as for Ed or to Ed. Ms. Brault testified that Ms. Vega held durable powers of attorney for Ed, both medical and financial, and that in her opinion Ms. Vega was breaching her duty of care by not resolving and satisfying the amounts owed for Ed's housing.

Under examination by Ted's lawyer, Ms. Vega acknowledged that the handwritten portions of the powers of attorney Ed had signed in 2016 were in her handwriting, but testified that she prepared them at his request.

Ms. Vega cross-examined Ms. Brault and testified on her own behalf. Ms. Vega testified that Franklin Hills was failing to bill private insurers before billing Medicaid, and that she was only *deferring* payment of Ed's participant liability until the amounts billed to Medicaid were corrected. She mentioned a couple of times Medicaid's admonition that participants "[o]nly pay what you owe," and testified that if she overpaid, she had no confidence she would ever get the money back. She testified that while she and Ed lived apart, Ed had always intended to provide for her financially. As for her stepson, Ted, she testified that Ted went for years without seeing her or Ed and knew nothing about her relationship with his father.

Ms. Vega testified that ownership of the Franklin Hills facility had changed at least four times, it had gone through a receivership, and it had been fined millions of dollars for Medicare and Medicaid fraud. Ms. Vega disputed the allegations in Steven's declaration that she had mistreated her daughter or financially manipulated Ed, and testified that Steven had been diagnosed with Asperger's syndrome and other dissociative disorders and was mentally ill.

After all the evidence was presented, the superior court commissioner found Ms. Vega had committed acts of financial exploitation and neglect and entered a continuing

5

VAPO. It revoked Ms. Vega's durable powers of attorney. Although Ted's lawyer had raised questions about the procedure by which Ms. Vega's spousal maintenance had increased from $800 per month to $2,400 per month, the commissioner's order did not interfere with that court-ordered support (the commissioner recognized that the support might be challenged in a future guardianship proceeding). The commissioner also denied the petition's request that it restrain Ms. Vega from having any contact with Ed, stating,

> I am going to allow continued contact because I think that is a relationship that you have established to me that is important not only to you, but it sounds like might be important to him.
> But under that order, you will not be able to talk to him about his money. You will not be able to talk to him about these court proceedings because I don't—I don't want him to get upset.

RP at 56-57.

The commissioner ordered Ms. Vega to turn over Ed's funds that she had been receiving as his attorney in fact. The VAPO restrained Ms. Vega from committing or threatening to commit acts of neglect or financial exploitation against Ed, transferring Ed's property for her benefit without representation for Ed, transferring Ed's property for his Medicaid participation to herself, and removing Ed from his residence.

Ms. Vega appeals. Her appeal was delayed by requested extensions and by a motion from Ms. Vega to submit additional evidence, which was denied. It was further delayed when Ed passed away in October 2020 and Ted filed a motion for this court to appoint a substitute party pursuant to RAP 3.2, explaining that no probate or appointment

6

of a personal representative was anticipated. The motion was heard by our

commissioner, who stayed the motion after Ms. Vega indicated she might seek to be

appointed personal representative. Ms. Vega was afforded 30 days within which to

provide evidence that she had opened a probate action or obtained appointment as

personal representative.

When no evidence was forthcoming, our commissioner entered an order

substituting Ted for Ed as respondent to this appeal pursuant to RAP 3.2(a), and the

matter was re-set for hearing. Ted did not seek to submit anything further and the appeal

was considered by the panel without oral argument.

ANALYSIS

Ms. Vega, who proceeds pro se on appeal, identifies 22 assignments of error. We

deal with them categorically.

*Waiver*

Ms. Vega's assignments of error 1 and 3 allege that her due process was violated

when she received only four days' notice of the hearing on Ted's petition, that she was

not allowed to offer her documentary evidence, and that she agreed to admitting Steven's

declaration without appreciating the downside. The hearing proceeded on these terms

only after the commissioner both obtained and affirmed Ms. Vega's agreement that she

wished to accept these terms as a condition of proceeding rather than continuing the

hearing for two weeks.

Ms. Vega affirmatively waived any objection to exclusion of her documents and exhibits and to the admission of Steven's declaration. A defendant can even waive insufficient service. *Romjue v. Fairchild*, 60 Wn. App. 278, 281, 803 P.2d 57 (1991). With respect to these and all of the other issues raised by Ms. Vega, pro se litigants are held to the same standard as attorneys. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

*Failure to preserve error*

Ms. Vega complains in assignment of error 10 that she and Ted's lawyer were rushed in their presentation because the courtroom was needed for another case. With limited exceptions that do not apply here, we will not review an issue that is raised for the first time on appeal. RAP 2.5(a).

The hearing below was to have commenced at 1:30 p.m., and the commissioner reminded the parties several times that another matter was scheduled in the courtroom for 4:00 p.m. In fact, as reflected in the record, the commissioner did not complete entry of the VAPO until 4:14 p.m. CP at 11, 32. If Ms. Vega believed that she could not receive a fair hearing within the time constraint presented, it was incumbent for her to raise it during the hearing. The solution would likely have been to continue the hearing, which Ms. Vega had already said she did not want to do. We will not review alleged error that was not preserved.

*Failure to identify any error*

Review is afforded on appeal to correct any reversible error that "a party contends was made *by the trial court*." RAP 10.3(a)(4) (emphasis added). An appellant (including a pro se appellant) must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Id.*

Assignment of error 10 complains that the commissioner repeatedly interrupted Ms. Vega's cross-examination of Ms. Brault to tell Ms. Vega that she would have an opportunity to rebut Ms. Brault's testimony later, in her own presentation. The commissioner did interrupt, politely and necessarily. Ms. Vega kept forgetting that cross-examination was not her opportunity to testify or argue with Ms. Brault. The trial court did not err by reminding Ms. Vega of the required procedure.

A number of Ms. Vega's assignments of error fail to identify an error that was allegedly committed by the *trial court*.

Assignments of error 5, 6, 9, 19 and 21 complain of "testimony" by Ted's lawyer, Lisa Malpass. But lawyers do not testify, and Ms. Malpass did not testify in the hearing below. She questioned witnesses and advanced argument, something Ms. Vega also had the opportunity to do.

9

If true, assignment of error 20—that Ms. Malpass agreed to contact the nursing home about revisions in the continued VAPO but failed to do so—is not reflected in the record and is not related to *trial court* error. For both reasons, it is not reviewable on appeal.

Assignment of error 8 is that Ms. Brault stated early in the hearing that her investigation was ongoing and expressed a concern that it not be compromised by her answers. At issue was confidentiality required by RCW 74.35.095. Ted's lawyer sought and obtained a ruling by the commissioner under RCW 74.35.095(3) authorizing Ms. Brault to disclose facts about the investigation for purposes of the hearing. *See* RP at 9. Ms. Vega offers no argument why this was trial court error.

Finally, assignment of error 22 complains about a factual discrepancy in allegations about Ms. Vega's court-ordered spousal maintenance that were made in a separate guardianship proceeding. She also complains that payments of her spousal maintenance are in arrears. Neither is based on an alleged trial court error affecting the order that is before us on appeal.

*Substantial evidence supports the commissioner's findings of fact*

Ms. Vega's assignments of error 4, 5, 11, 12, 13, 14, 15, 16, 17, and 18 either

complain about the commissioner's credibility assessments or otherwise complain about

evidence offered by Ted's witnesses—mostly testimony offered by Ms. Brault.[2]

It is not the role of this court to re-weigh evidence or assess the credibility of the

witnesses. A trial court's findings are reviewed for substantial evidence. *In re*

*Vulnerable Adult Pet. for Knight*, 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014).

"'Substantial evidence'" means evidence that is sufficient to persuade a rational, fair-

minded person of the truth of the finding. *Blackburn v. Dep't of Soc. & Health Servs.*,

186 Wn.2d 250, 256, 375 P.3d 1076 (2016). We defer to the trial court "on the

persuasiveness of the evidence, witness credibility, and conflicting testimony." *Knight*,

178 Wn. App. at 937. When reviewing whether the order is supported by substantial

evidence, appeals courts "need only consider [the] evidence favorable to the prevailing

party"—in this case, Ted. *Endicott v. Saul*, 142 Wn. App. 899, 909, 176 P.3d 560 (2008).

We view the evidence with the presumption that the commissioner found Ms.

Brault's and Steven's evidence to be credible. The commissioner's findings are

supported by what those witnesses said. It is irrelevant that Ms. Vega disagreed and still

disagrees.

---

[2] If Ms. Vega thought this testimony was objectionable on some evidentiary basis,
then her evidentiary objection was not preserved. *See* "*Failure to preserve error*," *supra*;
RAP 2.5(a).

*The trial court's findings support its conclusions of law*

Finally, a trial court's decision to grant or deny a protection order is reviewed for an abuse of discretion. *Knight*, 178 Wn. App. at 936. "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). Whether the trial court's findings support a conclusion of law is a question of law we review de novo. *Knight*, 178 Wn. App. at 937.

Ms. Vega's assignments of error 2 and 7 appear to challenge the trial court's conclusions that Ms. Vega engaged in financial exploitation by holding onto Ed's money and subjecting him to the possibility of eviction. She characterizes these conclusions as based on "'if' statements" and a "hypothetical." Appellant's Am. Opening Br. at 7-8. The only question that the commissioner treated as unanswered, and that did not need to be answered, is whether Ms. Vega held onto Ed's portion of his social security benefits because she was spending them on herself, or held onto his portion because it was taking her inordinately long to resolve and settle his liability to Franklin Hills. Either way, the commissioner's conclusion that withholding the funds was financial exploitation justifying a VAPO was not an error of law nor was it an abuse of discretion.

No. 36344-9-III
*Vega v. Madsen*

*Attorney fees*

Ted requests an award of guardian and attorney fees and costs on appeal from Ms. Vega pursuant to RAP 18.1 and RCW 74.34.130(7). RAP 18.1(a) allows this court to award attorney fees and costs on appeal "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses." RCW 74.34.130(7) provides that among the relief that the court "may" order if it deems it necessary for the protection of the vulnerable adult is an award of fees and costs. We decline to award fees and costs on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.

13